**Frank H. MULLER and Ronald Lloyd French, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 1181.**

Supreme Court of Alaska.

Jan. 7, 1971.

**824**

Marcus R. Clapp, Anchorage, for appellant, Frank H. Muller.

James L. Johnston, Anchorage, for appellant, Ronald Lloyd French.

G. Kent Edwards, Atty. Gen., Juneau, Robert L. Eastaugh, Asst. Atty. Gen., Anchorage, for appellee.

## OPINION

Before BONEY, C. J., DIMOND, RABINOWITZ and CONNOR, JJ., and LEWIS, Superior Court Judge.

BONEY, Chief Justice.

This is an appeal from a denial, by the superior court, third judicial district, of the appellants' motion to dismiss with prejudice certain criminal charges pending against them. The appellants contend that the denial of a pre-trial motion to dismiss with prejudice should be construed as a final judgment pursuant to Supreme Court Rule 6.[1] The state, on the other hand, maintains that the denial of a motion to dismiss is not an appealable final judgment. We agree with the state's view.

 The denial of the appellants' motion did not terminate the proceedings against them and was in no sense a final judgment of the type contemplated by Rule 6.[2] The provisions of the Supreme Court Rules governing petitions for review are specifically designed for cases such as this, and permit discretionary review by this court.[3] Because a constitutional question of particular substance and importance has been presented we will consider this appeal as a petition for review, and grant review.[4]

The circumstances which precipitated this appeal deserve brief mention. The appellants, Ronald Lloyd French and Frank H. Muller, were indicted by a grand jury

---

1. Supr.Ct.R. 6 provides in part:
 An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof * * *.

2. In Stewart v. State, 438 P.2d 387, 389 (Alaska 1968), this court considered an appeal under similar circumstances and concluded:
 We are in agreement with appellee's position and hold that a denial of a motion for judgment of acquittal where a new trial has been ordered does not terminate the proceedings, and is not a final order within the intendment of Supreme Court Rule 6.

3. Supr.Ct.R. 23 and 24. We have previously approved the use of a petition for review in a case involving denial of a pretrial motion. See Hartwell v. Cooper, 380 P.2d 591, 592 (Alaska 1963).

4. Supr.Ct.R. 23 provides, in part:
 An aggrieved party may petition this court for review of any order or decision of the superior court, not otherwise appealable under Rule 6, in any action or proceeding, civil or criminal, as follows:
 * * * * *
 (d) Where such an order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision may materially advance the ultimate termination of the litigation.
 * * * * *
 Supr.Ct.R. 24 provides in part:
 A review shall not be a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court.

in Anchorage on various felony charges stemming from an alleged incident of kidnap and rape. Pursuant to a motion by the state, the superior court ordered the cases against Muller and French to be consolidated. As a condition to the consolidation, the court ruled that the state would be precluded from using at trial certain statements ostensibly made to police by French.

The appellants were subsequently brought to trial in Anchorage;[5] a jury was selected and sworn, and the prosecuting attorney commenced his opening statement. In his statement, the prosecutor, evidently unaware of the previous ruling of the court, made reference to the statements which had been obtained from French:

> The State believes the evidence will show that after being fully accorded his constitutional rights at that particular time and place, Mr. French made statements indicating that Mr. Muller and Mr. French—or excuse me, Mr. French * * *.

At this juncture, the prosecutor was interrupted by the appellants' counsel, who apprised both the court and the prosecutor of the previous order excluding the statements made by French. The jury was excused and after a brief discussion the appellants moved for a mistrial. The prosecutor concurred and the court declared a mistrial.[6] Muller and French later filed a motion for dismissal with prejudice, contending that a retrial was precluded by double jeopardy.[7] Their motion having been denied, Muller and French brought this appeal.

 The sole question presented on appeal is whether, in light of the mistrial below, retrial of the appellants is forbidden by double jeopardy. At the time that the mistrial was declared, the jury had already been sworn and the trial had commenced; accordingly there can be no doubt that the appellants were placed in jeopardy at the first trial.[8] Yet the fact that an individual is once placed in jeopardy does not mean that, if a mistrial is declared, he cannot later be brought to trial anew. To the contrary, the proposition appears to be well settled that retrial will be permitted in numerous instances.[9] Author-

5. It must be observed that the superior court judge presiding at the appellants' trial was not the same judge who had previously ordered the cases consolidated; the prosecuting attorney was similarly new to the case, and had not participated in the pre-trial motion to consolidate. Both the trial judge and the prosecutor were, at the outset of the trial, unaware of the prior ruling excluding statements obtained from French.

6. The trial transcript reveals that the following exchange occurred:
The Court: You don't feel the court, by telling them that it can't be used and they shouldn't consider it can. * * *
Mr. Johnston [Defense Attorney]: I don't feel that's satisfactory.
The Court: Mr. Felton?
Mr. Felton [Prosecuting Attorney]: Your Honor, I'm afraid due to my ignorance of the prior court ruling that I'm—must concur with the defense counsels in this matter. * * *
The Court: In view of the concurrence by the District Attorney, the court will declare a mistrial. When do counsel think they can go to trial again on this?

7. Alaska Const. art. I, § 9 provides:
No person shall be put in jeopardy twice for the same offense. No person shall be compelled in any criminal proceeding to be a witness against himself.

U.S.Const., Amend. V provides, in part: [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.

8. Selman v. State, 406 P.2d 181, 186 (Alaska 1965):
The authorities are well settled that a defendant is considered to have been placed in jeopardy as soon as he has gone to trial and the jury sworn.

9. See Lewis v. State, 452 P.2d 892, 894, 895 (Alaska 1969). It should be noted that the court in Lewis adopted an interpretation of the Alaska double jeopardy provision identical with that espoused by federal courts under the United States Constitution. Since the decision in Lewis, the United States Supreme Court has made the double jeopardy provision of the

ities are especially consistent where a mistrial is procured by the defendant. In such cases it is generally recognized that by requesting a mistrial the defendant consents to the dismissal of the jury, and can therefore usually be retried.[10]

It is the appellants' contention that the general rule permitting retrial where a mistrial has been obtained at the request of the defendant should not apply to the present case. The appellants argue that our recent holding in Lewis v. State[11] requires a trial judge to make a specific finding of manifest necessity before a mistrial can properly be declared. It is asserted here that the trial judge granted the appellants' motion for mistrial solely on the basis of the state's concurrence, without making any inquiry into the question of manifest necessity. Thus, we are asked to hold that jeopardy attached in this case because the trial court granted a mistrial and dismissed the jury without considering the issue of manifest necessity. However, we do not think that *Lewis* supports the appellants' position.

▆ Our decision in Lewis v. State dealt with a situation where the trial court had granted a motion for mistrial made by the state. Mistrial was declared over the objections of the defendant. In *Lewis* we adopted the federal standard of "manifest necessity" as the proper gauge of whether a mistrial could be declared without barring retrial; we cited the following

language from Mr. Justice Story's opinion in United States v. Perez:[12]

> We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

Under this test, then, a trial court may declare a mistrial without barring retrial when it concludes that there is a manifest necessity to do so. In *Lewis*, we reviewed the record of trial court proceedings and concluded that there had been no manifest necessity to declared mistrial. Consequently we held that a retrial of the appellant's case was precluded by double jeopardy.[13]

▆ Our holding in the *Lewis* case stands for the proposition that if a mistrial is declared in the absence of a manifest necessity, then a retrial will be barred by double jeopardy. *Lewis* did not reach the question whether retrial will be barred in cases where the declaration of a mistrial is a manifest necessity. In such instances, the permissibility of a retrial will depend upon the circumstances that make it manifestly necessary to dismiss the jury. As we pointed out in *Lewis*, the right of the defendant to have his trial completed before the jury originally empaneled must at times be subordinated to a greater public

United States Constitution applicable to the states. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In view of the standard adopted in Lewis, however, the decision in Benton adds little to the appellants' claim in the instant case.

10. In Selman v. State, 406 P.2d 181, 186 (Alaska 1965), we held that "[i]f the jury is discharged with his [the defendant's] consent, he may be tried again." This statement finds substantial support in the federal cases. See, e. g., United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448, 452 (1964); Gregory v. United States, 133 U.S.App. D.C. 317, 410 F.2d 1016 (1969); Vac-

caro v. United States, 360 F.2d 606 (5th Cir. 1966); Blair v. White, 24 F.2d 323 (8th Cir. 1928); United States v. Harriman, 130 F.Supp. 198 (S.D.N.Y.1955). *See also* Note, Double Jeopardy: The Reprosecution Problem, 77 Harv.L.Rev. 1272, 1279 (1964); and Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, 905–907 (Douglas, J., dissenting 1961).

11. 452 P.2d 892 (Alaska 1969).

12. 9 Wheat. 579, 6 L.Ed. 165 (1824), *cited in* Lewis v. State, 452 P.2d 892, 895 (1969).

13. Lewis v. State, 452 P.2d 892, 896, 897 (1969).

interest.[14] As a general rule, where the failure to complete a trial stems from a manifest necessity, the public interest will prevail and double jeopardy will not be held to bar a retrial.

■ There may be instances, however, where double jeopardy will preclude a second trial. There is nothing absolute in the law, and, like all rules, the rule permitting reprosecution of a defendant where his mistrial was declared pursuant to a manifest necessity is not flawless. Ultimately, our inquiry must be directed to the question whether a retrial would result in the kind of harassment and oppression against which the double jeopardy provision is meant to protect.[15]

Instances of deliberate prosecutorial misconduct are particularly subject to scrutiny. Oppression will be most acute where a prosecutor deliberately precipitates a mistrial in a case which is going badly in order to allow himself, at a later time, either to present a better case or simply to harass the defendant with another prosecution.[16]

■ The greater the prosecutor's effort to inject a trial with prejudicial error, the more manifest becomes the necessity for dismissing the jury, and the more likely becomes the possibility that the defendant will be forced to request a mistrial. Under these circumstances, to adhere to the general rule allowing retrial where the mistrial is the result of a manifest necessity would lead to harsh and oppressive consequences.[17] Thus, in cases where it is clear that the prosecutor, motivated by a desire to avoid an acquittal in a case which is going badly, engages in purposeful misconduct which forces the court to declare a mistrial, the policy of protecting an accused individual from harassment by consecutive prosecution may demand that a retrial be barred, even though the mistrial was manifestly necessary.[18]

■ However, it is sufficient for the purposes of the instant case to observe that here, the prosecutor's remarks which led to the declaration of a mistrial were negligently made, and fall far short of evidencing the requisite element of intentional misconduct. The appellants have suggested that any misconduct on the part of a prosecutor—including negligent remarks—should bar retrial. We cannot accept this view. Such a rule would fail to adequately take into account the public interest in prosecuting and punishing individuals guilty of crime.[19]

---

14. *Id.* at 894, 895.

15. That the double jeopardy clause is aimed at protecting individuals from oppression and harassment by successive prosecutions has been frequently noted. *See, e. g.,* Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, 905 (1961) ; Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974, 978 (1949) ; and Note, Double Jeopardy: The Reprosecution Problem, *supra* n. 10, 77 Harv.L.Rev. at 1273–74.

16. *See, e. g.,* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, 103 (1963).

17. This problem is discussed in Note, Double Jeopardy: The Reprosecution Problem, *supra* n. 10 at 1281.

18. In a 1966 decision, the Pennsylvania Supreme Court indicated that retrial might be barred following a mistrial declared upon the defendant's motion where the prosecutor makes a calculated effort to terminate the trial in order to avoid an unfavorable verdict. Commonwealth ex rel. Montgomery v. Myers, 422 Pa. 180, 220 A.2d 859 (1966). The Pennsylvania court's opinion was specifically approved by the Third Circuit in United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 557, 558 (3d Cir. 1969). *See also* Commonwealth v. Warfield, 424 Pa. 555, 227 A.2d 177 (1967). This approach has also been suggested in Note, Double Jeopardy: The Reprosecution Problem, *supra* n. 10, 77 Harv.L. Rev. at 1281.

19. We must point out that the appellant's proposal would only result in the undermining of the usefulness of a mistrial as a protective device :

Such rigidity might well operate to deter a trial judge from terminating an irrevocably flawed proceeding in order to avoid immunizing an obviously guilty

In this case, then, we apply the general rule that where a mistrial is declared by reason of a manifest necessity, double jeopardy will not bar a retrial. The appellants argue that the rule should not apply because the trial court did not independently consider the question of whether there was a manifest necessity to declare the mistrial. We find this argument to be without merit. Where a defendant insists that a mistrial is necessary,[20] and where the trial court agrees, the manifest necessity for a mistrial may be considered to have been adequately established. Under such circumstances further inquiry into the issue on behalf of the defendant by an appellate tribunal would be nugatory.[21]

Moreover, to permit the appellants to argue the issue of manifest necessity on appeal would inevitably raise problems of estoppel. By opting to move for a mistrial instead of requesting a jury instruction to repair any damage which had been caused by the prosecutor's remarks, the appellants actively asserted the manifest necessity of dismissing the jury which had been empaneled to hear their case. Having succeeded in persuading the trial court that a mistrial was necessary, the appellants now seek to convince us on appeal that the trial court committed error by granting an unnecessary mistrial. Certainly, a trial court must always be circumspect about granting a mistrial. Yet to allow the appellants to prevail on appeal by maintaining a position diametrically opposed to that which they took at trial would be inimical to the integrity of the judicial process. In short, the appellants should not be permitted to blow hot at trial and then blow cold on appeal.

The appellants also believe that the prosecutor's concurrence in their motion for mistrial in some way negated the effect of their request for mistrial, and that accordingly the trial court was bound to make a specific inquiry into the issue of manifest necessity. We disagree. Manifest necessity was conclusively established when the appellants' insistence upon a mistrial was accepted by the court. At no time did the appellants evidence a desire to retract their motion. We simply cannot perceive how the fact that the prosecutor was candid and honest in admitting that he had made a mistake alters the circumstances which led to the appellants' motion for a mistrial.

We conclude that jeopardy did not attach when the trial court granted the appellants' motion for mistrial, and we affirm the court's refusal to dismiss with prejudice the charges pending against the appellants.

---

defendant from further prosecution, thus compelling the parties to endure a probably inconclusive trial.
Commonwealth ex rel. Montgomery v. Myers, 422 Pa. 180, 220 A.2d 859, 866 (1966).

20. In the present case, defense counsel was adamant in contending that a mistrial was necessary. See the excerpt from the trial transcript cited *supra* n. 6.

21. This holding is not tantamount to a ruling that the appellants waived their rights to protection under the double jeopardy clauses. To the extent that we must consider whether reprosecution will undermine the policies upon which the protection of double jeopardy is founded we agree with the appellants that they have not waived their constitutional rights by moving for a mistrial.