517 P.2d 106

The CITY OF TUCSON, an Arizona municipal corporation, the Honorable Mario Cota-Robles and Magistrates of the City Court of the City of Tucson, Appellants,

v.

Augustin VALENCIA, Appellee.

No. 2 CA–CIV 1484.

Court of Appeals of Arizona, Division 2.

Dec. 26, 1973.

Rehearing Denied Jan. 29, 1974.

Review Denied Feb. 19, 1974.

Herbert E. Williams, City Atty., by R. M. Detrick, Asst. City Atty., Tucson, for appellants.

William Gordon, Tucson, for appellee.

HATHAWAY, Chief Judge.

The City of Tucson has appealed from a superior court judgment granting relief to defendant Augustin Valencia in his special action. This court has jurisdiction, A.R.S. § 12–2101(B); Shenfield v. City Court of City of Tucson, Pima County, 8 Ariz.App. 81, 443 P.2d 443 (1968); Crouch v. Justice of Peace Court of Sixth Precinct, 7 Ariz.App. 460, 440 P.2d 1000 (1968).

The facts as contained in defendant's special action complaint are as follows: Defendant had been cited for two offenses

arising out of the same incident—Shoplifting, A.R.S. § 13–673, and False Information to a Police Officer, Tucson City Code 11–20. Apparently the offenses were to be tried separately. Before the shoplifting trial, the Magistrate ordered in limine that no testimony pertaining to the false information charge would be admitted before the jury. A jury was empaneled and the city called its first witness—a store security officer. When asked if he could identify the defendant, the security officer pointed to him and testified that defendant had given him two different names. Defendant's motion for a mistrial on the ground that forbidden testimony had been given before the jury was granted. A new trial was set.

Defendant then moved to dismiss the criminal complaint asserting that a second trial would violate the double jeopardy provisions of the Arizona and United States constitutions. The Magistrate denied his motion and a special action was filed in superior court. After hearing arguments, the superior court found that because the inadmissible evidence had been "wrongfully presented . . . as a proximate consequence of prosecutor's negligence, to the prejudice of the defendant", a second trial would constitute double jeopardy, and ordered dismissal of the complaint. The prosecutor's alleged negligence apparently consists of his failure to instruct his witnesses before trial not to give testimony bearing upon the false information charge.

Jeopardy attaches when a jury is impaneled and sworn and proceedings commence. State v. Mojarro Padilla, 107 Ariz. 134, 483 P.2d 549 (1971). The city claims that it was error for the superior court to hold, as a matter of law, that a retrial would violate defendant's rights under the double jeopardy clauses found in our state [1] and federal [2] constitutions when the

---

1. Arizona Constitution, Art. 2, § 10, A.R.S.
2. Fifth Amendment, U. S. Constitution, held applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395

U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). See Klinefelter v. Superior Court, County of Maricopa, 108 Ariz. 494, 502 P.2d 531 (1972).

motion for a mistrial was made by defendant.[3]

In United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971), the double jeopardy clause was characterized as insuring a criminal defendant the "valued right to have his trial completed by a particular tribunal" (citing Wade v. Hunter, 336 U.S. 684, 689, 69 S. Ct. 834, 837, 93 L.Ed. 974 (1949). Expounding on this right in the context of an aborted trial due to a mistrial declaration, the court stated that "the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant declaration of mistrial."

Contrary to the facts before us where defendant specifically requested a mistrial, most recent pronouncements by our higher state and federal courts have examined whether a defendant has been deprived of this right to have his trial completed by a particular tribunal when a mistrial was declared over his objections or in the face of his silence. See State of Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973); United States v. Jorn, supra; Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Gori v. United States, 367 U.S. 364, 81 S. Ct. 1523, 6 L.Ed.2d 901 (1961); Klinefelter v. Superior Court, County of Maricopa, 108 Ariz. 494, 502 P.2d 531 (1972). Also, see our opinion in State v. Fenton, 19 Ariz.App. 274, 506 P.2d 665 (1973).[4]

While agreeing that the granting of a mistrial without the consent of defendant raises serious double jeopardy problems, the courts are almost unanimous in the belief that a defendant usually waives any double jeopardy claim when he moves for or consents to a mistrial. In United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), it was held that a defendant, whose guilty plea had been induced by judicial remarks during trial and later found to be invalid, could be retried. The court stated:

> "If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him." (377 U.S. at 467, 84 S.Ct. at 1590) (Citations omitted) (Emphasis in original).

And in United States v. Jorn, supra, the court stated:

> "Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." (400 U.S. at 485, 91 S.Ct. at 557).

Furthermore, an abundance of state high court and lower court cases squarely hold a double jeopardy plea is waived when the mistrial is requested or consented to by the defendant. Among the most recent are Roberts v. United States, 477 F.2d 544, 545

---

3. It has long been held in Arizona that an improperly declared mistrial can bar retrial of a defendant under the double jeopardy clause, but not if it is declared upon the defendant's own motion. State v. Acosta, 103 Ariz. 43, 436 P.2d 592 (1968); State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962); Westover v. State, 66 Ariz. 145, 185 P.2d 315 (1947); State v. Shaw, 6 Ariz.App. 33, 429 P.2d 667 (1967). These cases, however, are not wholly dispositive since they were decided before the U. S. Supreme Court declared the federal Fifth Amendment prohibition against double jeopardy applicable to the states through the Fourteenth Amendment. See note 2, supra.

4. In construing the double jeopardy clause in the context of a mistrial declared over defendant's objections, the courts have at least purported to apply a test first enunciated in United States v. Perez, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824). Briefly, the reviewing court is to first determine whether the mistrial was dictated by "manifest necessity" or the "ends of public justice." If so, defendant's right to have his trial completed by the first tribunal (which he asserted below) may be outweighed by the public interest in prosecuting and punishing individuals guilty of crime and his retrial would therefore be constitutional. Compare U. S. v. Jorn, supra, with State of Illinois v. Somerville, supra.

(8th Cir. 1973) ; United States v. Iacovetti, 466 F.2d 1147, 1152 (5th Cir. 1972) ; United States v. Pappas, 445 F.2d 1194, 1200 (3rd Cir. 1971) ; cert. den. sub nom.; Mischlich v. United States, 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971) ; United States v. Henderson, 142 U.S.App.D.C. 21, 439 F.2d 531, 532 (1970) ; Vaccaro v. United States, 360 F.2d 606, 608 (5th Cir. 1966) ; Muller v. State, 478 P.2d 822 (Alaska 1971) ; People v. Hathcock, 8 Cal.3d 599, 614–615, 105 Cal.Rptr. 540, 549–550, 504 P.2d 476, 485–486 (1973) ; State v. Calvert, 211 Kan. 174, 505 P.2d 1110, 1117 (1973) ; State v. White, 285 A.2d 832, 834 (Me.1972).

In United States v. Iacovetti, supra (466 F.2d at 1152), the court reasoned:

> "The appellants here, for the reasons already stated, moved for severances, or mistrials, or both. They not only contended that this was for their benefit but urged that it was absolutely essential. They knew that, if granted, these motions would inexorably necessitate trial to another jury. That was what they were asking for, they got it, and having thus succeeded in their strategy they cannot now be heard to invoke the bar of double jeopardy."

The most noteworthy exception [5] to the general rule is that when defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety or overreaching designed to avoid an acquittal, reprosecution might well be barred. See United States v. Jorn, supra, 400 U.S. at 486, 91 S.Ct. at 557, n. 12; and United States v. Tateo, su-

pra, 377 U.S. at 468, 84 S.Ct. at 1590, n. 3. In State v. Ballinger, 19 Ariz.App. 32, 504 P.2d 955 (1973), Division One of this court concluded that it could not decide a mistrial—double jeopardy claim because the defendant had not forwarded a transcript of the first trial. However, the court (19 Ariz.App. at 36, 504 P.2d at 959) noted:

> "There is a growing body of authority in support of the proposition that *deliberate* and *intentional* misconduct of a prosecutor which compels the accused to move for a mistrial so violates the protective policy of the constitutional guarantee against being twice placed in jeopardy that retrial is barred." (Emphasis added, citations omitted).

Defendant here claims that because of prosecutorial misconduct, which the superior court found to be "negligence",[6] he cannot be retried. The inadmissible testimony which precipitated defendant's motion for the mistrial cannot in any light be termed intentional and deliberate prosecutorial misconduct designed to avoid an acquittal. The prosecutor merely asked the security officer (who was the first witness) an introductory question as to the identity of the defendant. The answer stating that the defendant had given him two different names was clearly unresponsive. This was not a situation where, after several days of trial, the prosecutor realizes that his chances of conviction are weak and deliberately instigates a mistrial in order to obtain a second chance. The introduction of the inadmissible evidence was at most an

---

5. Other exceptions have been stated to this general rule that consent to a mistrial waives any claim of double jeopardy. One may be where the trial judge entertains a motion for a mistrial intimating that "the perceived error is fatal according to a decision called to counsels' attention by the court, and when little time has been granted to consider whether such a motion should be made. . . ." United States v. Walden, 448 F.2d 925, 930 (4th Cir. 1971). Another exception may be a situation in which the trial judge uses his authority to intimidate the accused into consenting (Compare United States v. Tateo, supra) or where for some

other reason consent is not freely and voluntarily given. See Commonwealth v. Wideman, 453 Pa. 119, 306 A.2d 894, 896 (1973). We intimate no opinion as to the above departures from the general rule, but merely note that none of them are relevant to the situation before us where defendant voluntarily made the mistrial motion and initiated the procedure which aborted the trial.

6. Although the superior court judge made a finding of negligence, it was based only upon arguments and not a trial as permitted by Special Action Rule 4(e), 17A, A.R.S., when "a triable issue of fact is raised".

accident caused by the prosecutor's failure to counsel the witness in advance. We therefore reject any contention by defendant that this was deliberate conduct on the part of the prosecution.

Even assuming that the prosecutor was negligent, it does not rise to the level of intentional misconduct designed to avoid an acquittal which is required before defendant can invoke double jeopardy after moving for a mistrial. Defendant argues that the harm to him is the same, whatever the motive of the prosecutor. However, he would suffer the same harm if the judge had inadvertently spoken of the false information charge, if it were discovered during trial that one of the jurors had prior knowledge of the excluded evidence, or if any one of the myriad of events which would justify a mistrial had occurred.

In People v. Hathcock, supra, the California Supreme Court rejected a similar contention that prosecutorial misconduct, short of a deliberate attempt to avoid an acquittal [7] justified a plea of double jeopardy when the defendant had moved for the mistrial. The court stated:

"We fail to see how defendant's 'dilemma' differs in any significant respect from the normal situation arising after possibly prejudicial error has occurred at any trial. In determining whether or not to move for a mistrial, defendants must always weigh the disadvantages of allowing the prosecution to begin its case anew against the benefits of completely eliminating a given trial error; these opposing considerations were certainly as much present in all the cases establishing and applying the general rule of 'consent' as they are in the instant case." (Citation omitted) 8 Cal.3d at 615, 105 Cal.Rptr. at 550, 504 P.2d at 486.

In Muller v. State, supra, the prosecutor in his opening argument, had inadvertently made reference to evidence which had been ruled inadmissible prior to trial. He had evidently been unaware of the pretrial ruling. The Supreme Court of Alaska held (478 P.2d at 827):

"However, it is sufficient for the purposes of the instant case to observe that here, the prosecutor's remarks which led to the declaration of a mistrial were negligently made, and fall far short of evidencing the requisite element of intentional misconduct. The appellants have suggested that any misconduct on the part of a prosecutor—including negligent remarks—should bar retrial. We cannot accept this view. Such a rule would fail to adequately take into account the public interest in prosecuting and punishing individuals guilty of crime."

In United States v. Jorn, supra (400 U. S. at 480, 91 S.Ct. at 554), Mr. Justice Harlan noted that "a criminal trial is, even in the best of circumstances, a complicated affair to manage" and, quoting from Wade v. Hunter, supra, 336 U.S. at 689, 69 S.Ct. at 837, stated that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments". (400 U.S. at 481, 91 S.Ct. at 554–555).

When during the course of trial one side is seriously prejudiced, it is often "far better to grant the motion for mistrial and start over again" rather than render the trial a meaningless procedure which almost certainly would result in reversal on appeal. State v. Reynolds, 11 Ariz.App. 532, 535, 466 P.2d 405, 408 (1970). Were we to hold that defendant's retrial is barred on double jeopardy grounds, trial courts would be far less willing to grant mistrials under these circumstances in the future. Rather than granting a mistrial and immunizing defendant from further proceedings they would be inclined to allow the trial to proceed and risk reversal on appeal.

The Supreme Court noted in State of Illinois v. Somerville, supra, 410 U.S. at 458, 93 S.Ct. at 1073, that "(i)f a mistrial were constitutionally unavailable in situations

---

7. See 105 Cal.Rptr. at 550, 504 P.2d at 486, n. 14.

such as this, the State's policy could only be implemented by conducting a second trial after verdict and reversal on appeal, thus wasting time, energy, and money for all concerned." See also Muller v. State, supra, 478 P.2d at 827, 28 n. 19; and Commonwealth v. Myers, 422 Pa. 180, 220 A.2d 859, 866 (1966).

We therefore hold that since the prosecution did not intentionally abort the trial, defendant cannot rely on prosecutorial misconduct to invoke double jeopardy. The City's error at trial, if any, was unintentional and had the same effect at trial as prejudice resulting from any other source. Accordingly, the superior court erred in ordering dismissal of the complaint against defendant.

Reversed.

KRUCKER, and HOWARD, JJ., concur.