523 P.2d 511

**The STATE of Arizona, Appellee,**

v.

**Hector Ramon GANDARA, Appellant.**

**No. 2890.**

Supreme Court of Arizona, In Banc.

June 13, 1974.

Gary K. Nelson, Atty. Gen. by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Edward N. Hendricksen, Yuma, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from jury verdicts and judgments of guilt to the crimes of transporting marijuana, § 36–1002.07 A.R.S. and offering to sell marijuana, § 36–1002.07 A. R.S., together with a sentence of not less than five nor more than six years upon each count to be served concurrently.

We are asked to consider only one question on appeal and that is whether, at a joint trial, evidence that a codefendant had expressed his willingness to take a lie detector test was so prejudicial as to deny the defendant a fair trial.

The facts necessary for a determination of this matter on appeal are as follows. On or about 30 October 1973, defendant and three others were arrested by agents of the Drug Enforcement Administration and the Yuma County Narcotics Task Force in the parking lot of Johnny's Silver Spur Bar in Yuma, Arizona. The arrests were made just after defendant's automo-

bile had arrived at the parking lot and the trunk opened in anticipation of a sale to the undercover agents. The trunk contained approximately 78 kilos of marijuana. Of the four people charged, one, Fernando Bonillas, did not appear at the trial. Another, George Gonzales, obtained a directed verdict at the close of the State's case. The third defendant, Juan M. Lara, went through the trial, but the jury could not reach a verdict and a mistrial was declared. The defendant was found guilty as charged.

During the examination of the codefendant Lara by his attorney, the following transpired:

"Q Now, another question. During the course of the proceedings here, since October 30th of this year have you repeatedly offered to take a lie detector test concerning your involvement in this particular case?

"A Yes, sir.

"Q And has the County Attorney's office refused to allow you to do that?

"A Yes, sir."

No objection was made by the State or by the defendant Gandara to this question. Defendant on appeal contends that this questioning was not only erroneous, but prejudicial to the defendant as well. This court has previously stated:

"* * * Consistent with this approach appellate courts have reversed convictions in cases where lie-detector results unfavorable to defendants were placed before the juries inferentially. (citations omitted) Further, it is uniformly held that a defendant is not permitted to introduce evidence of his willingness to take a lie-detector test. (citations omitted) Nor can a defendant's refusal to submit to a polygraphic interrogation be shown by the state directly, (citation omitted), or indirectly, (citation omitted)." State v. Valdez, 91 Ariz. 274, 278, 371 P.2d 894, 896–897 (1962).

And:

"There is no question but that evidence of, or reference to, a polygraph test is inadmissible for any reason. All authorities are in accord. (citations omitted) However, under certain circumstances where an answer is in part unresponsive and there is no indication or claim that the prosecution knew, expected, or solicited the unresponsive answer, there is no error. (citations omitted) The court properly instructed the jury to disregard the answer and strike it from the record. We hold that this fully protected the defendant and that if there was error, it was not prejudicial." State v. Bowen, 104 Ariz. 138, 141, 449 P.2d 603, 606 (1969).

The brief of the State, while admitting the general rule that evidence of a witness's refusal or willingness to take a lie detector test is error because of the prejudicial implications inherent therein, contends, and rightly we believe, that in the instant case there was no prejudice.

First, the defendant himself did not contend that the codefendant Lara was involved. There appears to be, then, no conflict between the defendant and the codefendant which would make a belief in Lara's testimony damaging to Gandara. The defendant testified concerning his codefendant Juan Lara as follows on cross-examination by defendant Lara's attorney:

"Q Mr. Gandara, from all that you know about this case did Juan Lara have anything to do with any part of it?

"A I never heard his name mentioned and I know that my friend didn't know him either."

Secondly, the evidence is overwhelming as to defendant's guilt in the matter. The marijuana was in his car and he was arrested at the scene. Agent George Cons testified concerning the defendant's "role":

"A Mr. Gandara told me that the marijuana in the Chevrolet was his, also that the Chevrolet was his.

"Q  Did Mr. Gandara indicate who had been driving that vehicle?

"A  Yes, sir.

"Q  Who did he say was driving it?

"A  He said he had been driving it.

"Q  Did he say where the vehicle came from?

"A  He said he had been at home and was contacted by his friends."

In addition, defendant's testimony as to why the marijuana was in his car did little to help his situation:

"Q  You remember yesterday that the special agent of the Federal government, George Cons, who testified? Do you remember him?

"A  Yes.

"Q  Had you ever seen him before yesterday?

"A  No.  Never.  I had never seen him.

"Q  After you were arrested did you not talk to George Cons?

"A  Yes, I have talked to him in the office.

"Q  In what office?

"A  Right here in the jail office.

"Q  Did he ask you any questions?

"A  Yes.

"Q  Did you tell him that you owned the marijuana that was seized?

"A  Yes.

"Q  Was that your marijuana?

"A  No, it wasn't mine.

"Q  Why then did you tell Mr. Cons that the marijuana was yours?

"A  Because he was making too many questions out of me.  He was making a lot of questions.

"Q  Did you tell Agent Cons that you drove the vehicle with the marijuana to the bar?

"A  No, I didn't tell him anything.

"Q  Did you in fact drive that vehicle with the marijuana to the bar?

"A  No, I didn't drive it.

"Q  Do you know the person who drove that car with the marijuana to the bar?

"A  Yes, I know him.  He was a friend from San Luiz.

"Q  What was he doing in your car?

"A  I loaned him my car.  I let him borrow my car and I had bought another one and I told him he could have that one.

"Q  Do you recall this morning, Mr. Gandara, that there was some testimony to the effect that you were seated behind the wheel of the vehicle that had the marijuana?

"A  No, I don't remember.

"Q  Were you at any time seated behind the wheel of a vehicle that had the marijuana at the bar?

"A  MR. VARGA: Off the record. May I speak to the interpreter off the record?

"THE COURT: You may speak to the interpreter privately.

"THE INTERPRETER: No, I wasn't. I was in the front of the car."

And:

"Q  There's a little more to my question.  Did you know what was going on there at the bar where your car was?

"A  No.  I didn't know what was going on, what was going to transpire. My friend only told me there was a car was going to pick up in there.

"Q  What's your friend's name.

"A  I just know him by a nickname.

"Q  What's the nickname?

"A  El Goto [sic], the cat.

"Q  Is he the one that told you there were 78 kilos there?

"A  Yes.

"Q  When did he tell you that?

"A  In the morning of the 30th.  The day that we were caught; that we were arrested.

"Q Were the 78 kilos in the car at that time?

"A At the time I had my own car, the yellow one.

"Q Where were the 78 kilos then?

"A I don't know where he had them.

"Q How do you know that he had them then?

"A He had told me that he had 78 kilos of marijuana and in the afternoon he asked me to loan him the car.

"Q Did your friend tell you why he wanted to borrow your car?

"A Yes, he told me.

"Q What did he say?

"A He asked me if I would lend him my car because he wanted to sell the 78—the marijuana."

The question concerning the codefendant's willingness to take a lie detector test was improper, State v. Valdez, supra; State v. Bowen, supra, but under the facts in this case we find no prejudice to the defendant.

Judgment affirmed.

HAYS, C. J., and LOCKWOOD, STRUCKMEYER and HOLOHAN, JJ., concur.