558 P.2d 692
**STATE of Arizona, Appellee,**

**v.**

**Mario David MARQUEZ and Robert Cano Rascon, Appellants.**

**No. 3190.**

Supreme Court of Arizona,
In Banc.

Dec. 20, 1976.
Rehearing Denied Jan. 18, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III, Chief Counsel, Frank T. Galati, Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Patrick E. Eldridge, Phoenix, for appellant Marquez.

George M. Sterling, Jr., Phoenix, for appellant Rascon.

STRUCKMEYER, Vice Chief Justice.

This is a consolidated appeal from convictions for armed robbery. Judgments affirmed.

On June 14, 1974, Julio Leon was assaulted and robbed by three men in an incident lasting over an hour. Appellants Marquez and Rascon were apprehended and identified as the perpetrators. The first question is whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution was violated by the retrial of appellants after their original consolidated trial ended in a mistrial granted at their request.

Appellants' first trial began on March 5, 1975. After the jury was impaneled and witnesses sworn, they moved for a mistrial due to a conversation held between the prosecuting attorney and the sentencing judge for the third perpetrator, Lorenzo Martinez. The gist of what transpired is that the prosecuting attorney went into the sentencing judge's chambers on the morning of March 6, 1975 in order to see the pre-sentence report on Martinez. The judge's staff, however, would not disclose the report unless the judge consented, so the assistant prosecuting attorney then spoke with the judge. In answer to the prosecuting attorney's statement that Martinez would take the entire blame for the assault, the judge said, in effect, that if someone took the blame for a crime committed by three people, then that person would get three times the punishment. The prosecuting attorney informed the trial court of this meeting, being of the view that the public defender should advise Martinez of the possible consequence of his testifying for appellants. Defense counsel then moved for a mistrial on the grounds of the possible coercion of a prospective witness. A mistrial was granted.

At the second trial, appellants moved to dismiss the complaint on the grounds that jeopardy had attached in the first trial and a retrial would violate the Double Jeopardy Clause of the United States Constitution. The motion was denied, and the subsequent trial resulted in a conviction from which appellants appeal.

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant against "multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273 (1976), and cases cited. A mistrial negates the defendant's "'valued right to have his trial completed by a particular

tribunal'." Id. 424 U.S. at 606, 96 S.Ct. at 1079, 47 L.Ed.2d at 273.

▪ A distinction has arisen regarding the applicability of the Double Jeopardy Clause in circumstances where the trial court declares a mistrial *sua sponte,* as opposed to a mistrial declared at the instance of a defendant or with his consent. In the former, since *United States v. Perez* (9 Wheat), 22 U.S. 579, 6 L.Ed. 165 (1824), it has been held that whether the Double Jeopardy Clause permits a new trial after a mistrial without a defendant requesting or consenting to it depends on whether there is a manifest necessity for the mistrial or whether the ends of public justice would otherwise be defeated. In contrast, a motion for mistrial made by a defendant ordinarily will remove any bar to reprosecution, except in circumstances "attributable to prosecutorial or judicial overreaching." *United States v. Dinitz,* supra; *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971) (plurality opinion.)[1] *See State v. Dowthard,* 92 Ariz. 44, 46, 373 P.2d 357, 358 (1962).

▪ The Supreme Court recognized in *Jorn* that a defendant, even in the face of prejudicial judicial or prosecutorial error, may wish to continue the trial. 400 U.S. at 484, 91 S.Ct. at 557, 27 L.Ed.2d at 556. However, in *Dinitz* the Court said:

"But it is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution. In such circumstances, a defendant's mistrial request has ob-

jectives not unlike the interests served by the Double Jeopardy Clause—the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions." 424 U.S. at 608, 96 S.Ct. at 1080, 47 L.Ed.2d at 274.

The Double Jeopardy Clause therefore offers a defendant protection "against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz,* supra, 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276.

Arizona case law is to the same effect as the federal cases in holding that intentional judicial or prosecutorial overreaching designed to cause a mistrial will result in a bar to any further prosecution. *State v. Wright,* 112 Ariz. 446, 449–450, 543 P.2d 434, 437–438 (1975); *City of Tucson v. Valencia,* 21 Ariz.App. 148, 150–152, 517 P.2d 106, 108 (1973). *See also, State v. Ballinger,* 19 Ariz.App. 32, 36–37, 504 P.2d 955, 959 (1973).

▪ Appellants argue that the federal cases "clearly hold that the prosecutorial error need not be improper or even unexcusably negligent to bar retrial." We find no merit in this contention. All of the cases cited by appellants as authority for the foregoing statement involved situations where a mistrial was declared over a defendant's objection or without his consent. Therefore, these cases deal with the "manifest necessity" test of *Perez,* supra. In the instant case, a mistrial was declared on defendant's own motion, made necessary by the prosecutor's discussion with the judge who was about to sentence a defense witness for involvement in the same crime for which appellants were on trial. When the prosecution provokes a defendant into mov-

---

1. "If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, *even if the defendant's motion is necessitated by prosecutorial or judicial error.*" (Emphasis added) *United States v. Jorn,* 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556.

ing for a mistrial, the test to apply in determining whether to hold that double jeopardy bars a reprosecution is one of judicial or prosecutorial overreaching *intentionally* calculated to force a mistrial. *United States v. Dinitz,* supra; *State v. Wright,* supra, 112 Ariz., at 449–450, 543 P.2d at 438; *City of Tucson,* supra, 21 Ariz.App. at 152, 517 P.2d at 109.

■ The actions of the prosecuting attorney do not warrant application of this rule to the case here. Neither the actions of the prosecutor nor the sentencing judge rise to the level of "intentional and deliberate prosecutorial misconduct designed to avoid an acquittal." *City of Tucson v. Valencia,* supra, at 151, 517 P.2d at 109. This type of conduct does not call for a bar to further prosecution. To hold that simple judicial or prosecutorial error is sufficient for barring retrial after the defendant, himself, has requested and been granted a mistrial, would undermine the public's interest in prosecuting and punishing the guilty. *See Muller v. State,* 478 P.2d 822, 827 (Alas.1971).

Appellants next attack the in-court identification, asserting that it was tainted by an unduly suggestive pre-trial confrontation at the preliminary hearing and also by the appellants' names being told to the victim prior to the first identification. Error is asserted in the trial court's determination reached after a hearing held pursuant to *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), that even though the circumstances of the pre-trial identification may have been unduly suggestive, the in-court identification was not tainted by the prior identification. We do not agree.

■ If the record shows that a pre-trial identification was unduly suggestive, then the in-court identification must be shown to have had an independent source other than the improper pre-trial identification. *State v. Lang,* 107 Ariz. 400, 489 P.2d 37 (1971); *State v. Dessureault,* supra. Although subsequent confrontations with a person reinforces a witness' original identification, it does not necessarily follow that the subsequent in-court identification is automatical-

ly tainted. *State v. Dessureault,* supra, 104 Ariz. at 384, 453 P.2d 951.

■ In the instant case, the victim was assaulted for a period of time extending over an hour. He testified that throughout this time, under well-lighted conditions, he had a good look at the three men. He unequivocally identified appellants as two of those men and his in-court identification was based on this incident:

"Q. What was the next thing that you remember happened?

A. * * * I was still trying to place the faces. So, I didn't even talk, or nothing, just kept an eye on what was going on.

Q. Excuse me, Mr. Leon, did you say 'place the faces?' 'I was still trying to place the faces'?

A. I was trying to keep, keep my mind on the people's faces so I could see if I could recognize anybody that was doing this to me."

At the Dessureault hearing, Mr. Leon was positive in his identification of the two appellants as his assailants:

"Q. Now, have you ever seen these men before today and before, or—let me rephrase that.

Have you ever seen them after the beating and the robbing?

A. Just at the other preliminary hearings.

Q. You saw each one of them at different preliminary hearings?

A. Yes.

Q. Had you seen them at any time before that preliminary hearing and after the beating?

A. No, I haven't.

Q. Have you seen them at any other time between the preliminary hearings, which you saw them at, and today?

A. No, I haven't.

Q. Would you be able to pick these two people out today if you had not seen them at the preliminary hearing?

A. Yes, I would.

\*      \*      \*      \*      \*      \*

Q. * * * Is your identification of them based on your seeing them at the time of the robbery?

A. Yes, that's right."

From the above-quoted testimony, the trial court could believe that Leon's in-court identification was not tainted by having seen the respective defendants at their preliminary hearings.

Neither was it tainted by the witness having been furnished the appellants' names by an eyewitness to the assault, one Cora Rodriquez. Leon testified:

"Q. Okay. Julio, does your identification in any way depend upon anything Cora Rodriquez told you—and I'm talking about your identification of these two men—or are you basing your identification upon the faces that you saw during this beating?

A. On the faces I saw that night."

.The testimony of Cora Rodriquez that the appellants were the men she saw assaulting Leon, corroborated his in-court identification, thereby lessening the chance of misidentification. Cf. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Appellants' final point on appeal involves references to lie detectors made at the voir dire of prospective jurors and during cross-examination of a State's rebuttal witness.

■ In Arizona, it is error, absent agreement of the parties, to refer at the trial to polygraph examination. *State v. Valdez*, 91 Ariz. 274, 283, 371 P.2d 894 (1962). However, where the reference to the examination does not prejudice the defendant, there is no reversible error. *State v. Gandara*, 111 Ariz. 80, 83, 523 P.2d 511 (1974); *State v. Bowen*, 104 Ariz. 138, 141, 449 P.2d 603 (1969); *State v. Freeman*, 24 Ariz.App. 367, 368, 538 P.2d 1168, 1169 (1975).

■ The reference to lie detector tests at voir dire arose in this manner:

"THE COURT: Are there others who feel—are there others of you who feel that solely because a person is a law enforcement officer he is entitled to be believed, solely because of that, more than any other witness who comes in? [A JUROR:] Your Honor, I—speaking something like that, in regards to just experience I have received from my son—I have heard my sons talk about, but a police officer, when he testifies, whether it be in a court of law, or anything that has to do with his job, he has subjected himself to the polygraph test, even though it cannot be used in a court of law, and he must—he is judged on that in his department.

THE COURT: There is no witness who will come to this courtroom who has taken a polygraph, that they have testified to, sir."

The only other reference to lie detectors occurred when the prosecuting attorney, in objection to defense counsel's attempt to elicit an opinion from the witness, said:

"Your Honor, at this time I'm going to object to the competency. She's not a human lie detector. She has already said she couldn't say."

In light of the two eyewitness' identifications, as well as the record, which clearly establishes that the reference to lie detectors did not suggest that appellants had refused to take the tests, or had taken them and failed, we do not find any prejudice to appellants. *State v. Gandara,* supra.

Judgments affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.