502 P.2d 1360

**STATE of Arizona, Appellee,**

v.

**John Edward DAMON, Appellant.**

**No. 2 CA–CR 300.**

Court of Appeals of Arizona,
Division 2.

Nov. 21, 1972.

Gary K. Nelson, Atty. Gen. by John S. O'Dowd, Asst. Atty. Gen., Tucson, and James P. F. Egbert, Certified Third-Year Law Student Under Rule 28(e), for appellee.

Risner, Wolf & Raven by William J. Risner, Tucson, for appellant.

HOWARD, Judge.

On June 19, 1971, the defendant, John Damon, was arrested for unlawful possession of narcotics in violation of A.R.S. § 36-1002. On January 18, 1972, a hearing was held in the Superior Court of Pima County on a motion to suppress evidence. The motion was denied and at the trial on February 1, 1972, the transcript of the hearing on the motion to suppress was, on stipulation of the parties, introduced into evidence. The trial court, sitting without a jury, found defendant Damon guilty of possession of cocaine and he was placed on probation for two years.

On June 19, 1971, the defendant entered Tucson International Airport at approximately 5:00 p. m. and purchased a ticket to San Francisco. All of his luggage was checked except for one bag which he carried. His destination was Eugene, Oregon where he was going to attend a university summer session.

When the plane was ready for boarding the defendant passed through the American Airlines departure lounge and gate and proceeded toward the aircraft. On the ramp outside the departure gate two United States Customs agents were conducting a routine weapons check as part of the government's anti-hijacking effort. Special agents Gilbert Young and Dennis Jantzen, fully uniformed and armed, were utilizing a "magnetometer" to detect weapons on the person or in the handluggage of the boarding passengers. These agents were joined by a United States Marshal in plain clothes.

When the defendant approached agent Young, he was asked to stop for a check for weapons. The magnetometer, which registers a response when a ferrous metal is present, registered a response when circled about defendant's bag.[1] Officer Young then asked the defendant what metallic item he had in his bag that would give a reading. When the defendant replied that there was nothing in his bag that would give any reading Officer Young asked him if he would mind stepping over to one of the other gentlemen to have his luggage searched. When asked whether defendant responded to this request, Officer Young testified that he did not remember the exact words but that defendant did answer that it was "all right."

Officer Jantzen then proceeded to search through the luggage for the source of the metallic object. His search disclosed a jar containing what appeared to be marijuana seeds, leaves and stems; also, two small clear plastic bags of white powder. No weapon was found. The defendant was then taken to the customs office at the Tucson International Airport and placed under arrest. A later field test of the white powder revealed it to be cocaine.

At the hearing on the motion to suppress, Officer Young testified that when he asked the defendant why he consented to the search, defendant stated that he did not think they would find any of the narcotics. The defendant's testimony, however, was that he allowed the search because he did not think he had any alternative. According to him, their request was "a polite form of command."

On appeal, defendant challenges the denial of the motion to suppress, posing the following question: "Did appellant knowingly and intelligently and without coercion consent to an otherwise unreasonable search?"

Although both parties deal at length with the issue of consent, we do not believe that is the pivotal issue.

---

1. The magnetometer is set to issue a warning when metal equal to or greater than an average 25-caliber pistol is present.

■ The Constitution of the United States does not forbid all searches and seizures, only those that are unreasonable. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Court made it clear that a search conducted without a warrant is *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. These exceptions are: (1) search incident to a lawful arrest, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); (2) exigent circumstances where there is a need for immediate action, as exemplified in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and recognized previously in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and (3) consent, State v. Sherron, 105 Ariz. 277, 463 P.2d 533 (1970); *cf.* Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

■ The first question that arises is whether the initial intrusion by the magnetometer was a "search" within the meaning of the Fourth Amendment. We can see no difference between an intrusion into the defendant's handbag by means of an electronic device rather than an actual physical intrusion by opening the handbag and conducting a physical search. The very purpose and function of the magnetometer is to search for metal and disclose its presence in areas where there is a normal expectation of privacy.

Having decided that the initial disclosure of the metal by means of the magnetometer constituted a search, we must now decide whether or not it falls within any of the recognized exceptions to the warrant requirement of the Fourth Amendment. In deciding this question we find that several courts have considered the federal anti-hijacking system and the search of passengers immediately prior to boarding an aircraft. These cases are United States v. Epperson, 454 F.2d 769 (4th Cir. 1972), cert. denied, 408 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972); United States v. Lindsey, 451 F.2d 701 (3d Cir. 1971); United States v. Bell, 335 F.Supp. 797 (E.D.N.Y.1971); United States v. Lopez, 328 F.Supp. 1077 (E.D.N.Y.1971) and People v. Erdman, 69 Misc.2d 103, 329 N.Y.S.2d 654 (1972). Only two of the foregoing cases are appellate court decisions. United States v. Lindsey, supra, and People v. Erdman, supra, did not involve the use of the magnetometer. In none of the foregoing cases was there a search of "carry-on" luggage articles.

In United States v. Lopez, supra, a federal district court judge considered the use of the magnetometer in conjunction with the use of a hijacker's "profile".[2] Although approving the constitutionality of the use of the magnetometer together with the hijacker's profile, he held the particular search to be unconstitutional. He further specifically abstained from deciding whether or not a high reading on the magnetometer without the use of the hijacker's profile would be enough to allow a search. U. S. v. Bell, supra, involved the use of the profile and the magnetometer and the search was upheld by the trial court.

In U. S. v. Epperson, supra, the defendant, as he passed by the instrument, set off an unusually high reading on the magnetometer. The U. S. Marshal using the magnetometer then asked Epperson if he were carrying a large amount of metal. Epperson produced several metal objects, but the device still gave a positive reading to his person. Thereupon the Marshal

2. In October 1968, a task force was appointed to consider the methods of combating the increasing number of airline hijackings. After studying known hijackers, the task force compiled 25 to 30 characteristics in which hijackers differed significantly from the air-traveling public. By putting only a few of them together, they could obtain a reliable combination sharply differentiating potential hijackers from non-hijackers.

searched his jacket and found he was carrying a loaded 22-caliber pistol. The court in *Epperson* upheld the search and seizure of the weapon under the "stop and frisk" doctrine enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Terry v. Ohio, supra, the Court approved a "limited search" by allowing law enforcement officers to "pat down" the clothing of a suspect and intrude under the surface when the pat-down reveals what might be a weapon.

■ Where a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot and that the person with whom he is dealing *may* be armed and presently dangerous; where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries; and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or another's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons. Can the search permitted by Terry v. Ohio, supra, be avoided by merely carrying the weapons in a briefcase or some other hand-carried object? If the object were of the type which would permit a "pat-down", there is no difficulty in extending *Terry*. Does the fact that the "hand-carried" baggage consists of a hard outer covering change the situation? We think not.

■■ The Court in Terry v. Ohio, supra, allowed the limited intrusion in order to protect the officer conducting the investigation and other persons in the area. In the anti-hijacking airport searches the search is justified to protect the safety of the prospective passengers and airplane crew. Air-piracy and its threat to national as well as international air commerce is known to all and we take judicial notice of the same. The initial use of the magne-

tometer is justified at its inception by exigent circumstances. The Constitution of the United States is not a suicide pact. The frequency of air-piracy and the danger and fright that it occasions to the passengers in flight fully justifies a warrantless search under the *Terry* doctrine and is reasonable provided it is limited to a search for weapons. A reading on the magnetometer which indicates the presence of a metallic object which could be a weapon is by itself enough to justify a further intrusion under *Terry*. The "pat-down" requirements of *Terry* are applicable only to hand-carried baggage or packages capable of being so searched. Objects not so capable of being searched may be opened provided they are capable of containing weapons. This includes objects inside a briefcase.

■ Appellant maintains that the magnetometer must be used in conjunction with the anti-hijacking profile for there to be a valid search. We do not agree. Adoption of such a requirement would mean that persons detected by the magnetometer to be carrying an unusually high content of ferrous metal could not be searched, absent their valid consent, unless they also met the profile. Thus, if the prospective hijackers could dress and appear like the average citizen, they would be immune from search. While it is true that the airline could then prevent them from boarding the aircraft, it would not prevent the hijacking from commencing at the boarding area instead of in the aircraft. Such a result would be "playing games" with the lives of innocent persons and we decline to participate.

The record discloses that the search conducted was limited to a search for weapons and conducted under the standards which we have previously set forth.

■ Since the search was lawfully initiated an officer need not close his eyes to evidence of other crimes which he may uncover. *Cf.* Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct.

2034, 23 L.Ed.2d 685 (1969); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L. Ed.2d 542 (1969); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Klor v. Hannon, 278 F.Supp. 359 (C.D.Calif.1967). The seizure of the narcotics was lawful.

Affirmed.

HATHAWAY, J., and J. RICHARD HANNAH, Judge of Superior Court, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge J. RICHARD HANNAH was called to sit in his stead and participate in the determination of this decision.