520 P.2d 1115

**STATE of Arizona, Appellee,**

v.

**William Clark MILLER, Appellant.**

No. 2619.

Supreme Court of Arizona,
In Banc.

April 10, 1974.

Gary K. Nelson, Atty. Gen., Phoenix by Howard L. Fell, Asst. Atty. Gen., Tucson, for appellee.

Ed Bolding, Former Pima County Public Defender by Richard Van Duizend, Former Deputy Public Defender, Tucson, for appellant.

STRUCKMEYER, Justice.

This is an appeal from a judgment of the Superior Court of Pima County finding appellant guilty of unlawful possession of marijuana for sale. The sole question is whether a warrantless search of appellant's flight bag at the Tucson International Airport by a United States Marshal was lawful under the Fourth Amendment to the United States Constitution.

The search arose out of the following facts. On the afternoon of November 16, 1971, appellant attempted to pass through the boarding gate for Transworld Airlines Flight # 230 at the Tucson International Airport. He was flying on a youth ticket as a youth fare passenger to Kansas City, but was stopped by the ticket agent and asked for his identification to prove his age. When appellant was unable to produce a youth card, the ticket agent called upon United States Marshal Douglas McClelland to check his identification. McClelland determined that appellant fit the profile for potential hijackers and asked for his consent to a pat-down search for weapons. This consent was given, and, since no weapons were found and McClelland being satisfied as to appellant's identification, appellant was allowed to enter the boarding area.

Just before leaving to board his plane, appellant picked up a small carry-on bag which McClelland had not seen before. McClelland approached appellant and requested permission to search the bag. Appellant absolutely refused, saying: "No

way." McClelland directed the airline employees to pull appellant's boarding pass so he could not board the aircraft; thereupon, appellant placed his bag in an airport locker. On McClelland's demand, appellant accompanied him into his private office, where McClelland questioned him for some two to three hours.

At a hearing on a motion to suppress, on July 3, 1972, McClelland testified that appellant was not under arrest, but said, "We weren't going to let him leave." McClelland, after interrogating appellant, as stated, finally ordered appellant's locker opened and his flight bag searched. Eight cellophane-wrapped bricks of marijuana were discovered. No search warrant was ever obtained or sought. At the hearing on the motion to suppress, McClelland also testified in answer to the question of what his primary reason was for searching the locker that, "It was the possibility of there still being a weapon or a bomb in the bag which could be used to hijack the plane."

On these facts it is palpably evident the search was unreasonable and, hence, unlawful under the Fourth Amendment to the Constitution of the United States.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Amendment's protection against unreasonable searches and seizures extends to a public locker. United States v. Durkin (D.C.N.Y.1971), 335 F.Supp. 922; United States v. Small (D.C.Mass.1969), 297 F. Supp. 582. In the latter case, the court said:

"His motion raises the question whether the locker was, during the 24-hour period defendant had exclusive right to use it, constitutionally protected, and, accordingly, free from unreasonable search.

The court finds that it was for the following reasons. Though located in a public place—the subway station—the contents of the locker were not 'knowingly expose[d] to the public'. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The locker itself may be viewed as 'an area where, like a home * * * and unlike a field * * * a person has a constitutionally protected reasonable expectation of privacy * * *.' *Id.* at 360, 88 S.Ct. at 516 (concurring opinion of Mr. Justice Harlan)." 297 F.Supp. 582, 584.

■ Only the most exigent circumstances can justify the failure to obtain a search warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971). The Court there said:

"Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' *and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.'* " (Emphasis supplied) 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576.

■ This is not a search incidental to a valid arrest. McClelland denied that he ever arrested appellant, testifying that appellant was only being detained while a check was run on him. But, aside from this dubious denial, there could be no valid arrest at the time McClelland detained appellant. No law of which we are aware permits the arrest of a traveler because he refuses to allow a search of his person or property. To be secure from such unreasonable searches is the stated purpose of the Fourth Amendment.

Nor did the exigencies of the situation make the warrantless search of appellant's locker and flight bag imperative.

The hijacking profile does not supply probable cause for such a search. In United States v. Ruiz-Estrella, 481 F.2d 723, 726 (2nd Cir., 1973), the Court said:

"To be sure, Ruiz-Estrella did fit the hijacking profile, but no one contends that this statistical survey, which Judge Weinstein in *Lopez* [United States v. Lopez, D.C., 328 F.Supp. 1077] described as identifying an armed individual about 6% of the time, 328 F.Supp. at 1097, can come close to supplying traditional probable cause for a search. *See* United States v. Meulener, 351 F.Supp. 1284 (D.C.Cal.1972)."

In United States v. Ruiz-Estrella, a ticket agent for National Airlines identified Ruiz-Estrella as a potential hijacker under the hijacking profile. Pursuant to a prearranged signal with a uniformed federal sky marshal, Ruiz-Estrella was taken into a stairwell at the end of the boarding ramp and advised that he would have to go through a baggage search. In a shopping bag which Ruiz-Estrella carried was a toy truck box, and in the box was a shotgun along with a number of shells. The court examined its prior case of United States v. Clark, 475 F.2d 240 (2nd Cir. 1973), and quoted this language from it with approval:

"* * * the opening and examination of Clark's bag would in our view be justifiable only upon a showing that he was aware that he had a right to refuse to be searched if he should choose not to board the aircraft." 481 F.2d 723, 727.

The court concluded that a search is justified only as long as the air passenger is aware of his ability to avoid the search by refusing to board the aircraft, saying:

"The record makes it quite clear that neither the ticket agent, the boarding agent, nor the sky marshal made Ruiz-Estrella aware of any such option." 481 F.2d 723, 728.

The Ninth Circuit has similarly twice ruled. *See* United States v. Davis (9th Cir. 1973), 482 F.2d 893 and United States

v. Miner (9th Cir. 1973), 484 F.2d 1075. In the latter case, the court held:

> "However, it is undisputed that when the airline employees attempted to extend the search to Miner's suitcase, he responded by saying, 'No, it's personal.' At the least, this was an apparent withdrawal of the implied 'consent.' At that point, the airline employees would have been justified in refusing to permit him to fly, but they could not compel him to submit to further search." 484 F.2d 1075, 1076.

And *see* People v. Hyde, 33 Cal.App.3d 128, 108 Cal.Rptr. 785 (1973).

In the instant case, appellant unequivocally refused permission to search his bag. At no time was he advised that he could either submit to the search of his bag or leave the airport. Instead, his boarding pass was pulled, thereby effectively preventing him from boarding the plane.

The superior court judge who denied appellant's motion to suppress was impressed by McClelland's fears of the possibility that there might be a bomb in the appellant's flight bag. We are not so equally impressed. Nor, apparently, was the United States Marshal, since he waited nearly three hours before ordering the locker opened.

The placing of bags, packages and parcels in lockers at airport terminals is a commonplace event done for the purpose of security from theft. If the placing of a bag, parcel or package in a locker in a public conveyance terminal can be considered as conveying a reasonable probability that a bomb is contained therein, by the use of the same unfettered imagination it is possible to say that all searches of a traveler's personal property, inside or outside of lockers, are justified as in the public interest, and, hence, the exigencies of the situation permit a warrantless search. We do not think so.

The judgment of the Superior Court is reversed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.