[Crim. No. 22891. Second Dist., Div. Five. Jan. 2, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN MELVIN BLEILE, Defendant and Appellant.

COUNSEL

Oshman, Brownfield Smith & Hobart and G. Dana Hobart for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Cynthia Waldman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ASHBY, J.**—By information appellant was charged with possession for sale of marijuana in violation of Health and Safety Code section 11530.5. After denial of appellant's motion to suppress evidence under Penal Code section 1538.5, the cause was submitted on the testimony contained in the preliminary hearing transcript after the necessary waivers of constitutional rights. The court found appellant guilty of possession of marijuana in violation of Health and Safety Code section 11530, a lesser but necessarily included offense. Appellant was sentenced to 90 days in the county jail, imposition of sentence was suspended and appellant was placed on probation. This appeal is taken from the judgment of conviction. This case comes before us upon transfer by the Supreme Court for reconsideration in light of *People* v. *Hyde,* 12 Cal.3d 158 [115 Cal.Rptr. 358, 524 P.2d 830].

Deputy United States Marshal Ronald Nichols, assigned to the air piracy detail, was on duty the morning of May 26, 1972, at Gate 58, Los Angeles International Airport, checking the boarding of Western Airlines flight 84 to San Francisco. A magnetometer through which all boarding passengers were required to pass gave a high reading when appellant passed through it, carrying a luggage bag. Marshal Nichols requested appellant to pass through the machine again without the bag, whereupon an acceptable reading was given. Marshal Nichols requested appellant to step around the corner to a position at a table and to open his bag for inspection, which appellant did.

Upon opening the luggage Marshal Nichols saw a large yellow plastic bag, about three feet by two and a half feet in size. The plastic bag was tied in a knot at the top.

Nichols opened the yellow bag and inside it he discovered two clear cellophane bags containing marijuana.[1] The yellow plastic bag also contained soiled laundry, and in this opinion we shall refer to it as the laundry bag, to distinguish it from appellant's carry-on flight bag and from the cellophane bags containing the marijuana.[2]

Nichols arrested appellant and turned him and the evidence over to the Los Angeles Police Department. The 2 cellophane bags contained 577 grams of marijuana.

The sole contention on appeal is that the trial court erred in denying appellant's motion to suppress evidence under Penal Code section 1538.5, because the marijuana was procured as the result of an illegal search and seizure. We find this contention to be without merit and therefore we affirm the judgment.

Our Supreme Court recently upheld the constitutionality of a similar airport search in *People* v. *Hyde, supra,* 12 Cal.3d 158. There the defendant was stopped as he attempted to board a Western Airlines flight from San Diego, and was requested to place his hand luggage on a table and open it, because he had activated a magnetometer indicating the presence of metal, and he fit the Federal Aviation Administration's behavioral profile of a potential hijacker. The deputy United States marshal found a shaving kit in the luggage, opened the kit, and discovered a clear plastic Baggie containing marijuana.

The court found that because such predeparture screening procedures are a central phase of a comprehensive regulatory program designed to insure that dangerous weapons will not be carried onto an airplane and to deter potential hijackers from attempting to board, the search was proper under a series of United States Supreme Court decisions recognizing that searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose may be permissible

---

[1]Marshal Nichols had smelled the odor of marijuana emanating from the yellow bag. Prior to becoming a deputy U.S. marshal, Nichols had been with the Los Angeles Police Department for five years, and had smelled marijuana approximately 300 times.

[2]Nichols originally testified that upon opening the flight bag he saw two large yellow plastic bags which smelled of marijuana and were packaged and felt similar to marijuana that he had observed on other occasions, and that it was these two bags which were opened and found to contain marijuana. This was apparently a mistake which was corrected by the officer in his later testimony. The evidence showed that in fact the marijuana was in two clear cellophane bags, in turn contained in the one yellow plastic laundry bag.

though not supported by a showing of probable cause directed to a particular place or person to be searched. (*People* v. *Hyde, supra,* 12 Cal.3d at pp. 165-166; *People* v. *Kluga,* 32 Cal.App.3d 409, 414-417 [108 Cal.Rptr. 160].) ■ Such preboarding inspections are reasonably and constitutionally permissible if "confined to minimally intrusive techniques designed solely to disclose the presence of weapons or explosives." (*People* v. *Hyde, supra* at p. 168.)

■ Appellant contends that the permissible scope of the search was exceeded when the marshal opened appellant's laundry bag. This contention is without merit. Clearly the laundry bag could have contained weapons, explosives, or metallic items setting off the magnetometer. It was therefore reasonable for the marshal to examine its contents to determine if it contained such items. In *People* v. *Hyde, supra,* the marshal opened a shaving kit which he found in the defendant's hand luggage. The court said: "There is no evidence that [the marshal] abused his authority by conducting an exploratory investigation into defendant's bag or that the scope of the search exceeded its justification. Indeed, all indications point to the conclusion that [the marshal] took only the minimally necessary precautions to insure that defendant was not carrying materials inimical to a safe air journey. The marshal, therefore, acted lawfully in proceeding to search defendant's bag." (*People* v. *Hyde, supra* at p. 169, fn. omitted.)

The marshal was not limited, as appellant contends, to a pat-down or frisk of the laundry bag. A pat-down would not have been sufficient to disclose the presence of possible weapons wrapped in soiled laundry. (*United States* v. *Bell* (2d Cir. 1972) 464 F.2d 667, 674, cert. den., 409 U.S. 991 [34 L.Ed.2d 258, 93 S.Ct. 335]; *United States* v. *Slocum* (3d Cir. 1972) 464 F.2d 1180, 1181, 1183; *United States* v. *Moreno* (5th Cir. 1973) 475 F.2d 44, 51, cert. den., 414 U.S. 840 [38 L.Ed.2d 76, 94 S.Ct. 94].) Furthermore, in *Hyde* the court's analysis of the constitutionality of airport searches rejected a frisk theory based upon *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. (*People* v. *Hyde, supra* at p. 163.) Once it is conceded that the carry-on luggage of boarding passengers may be searched when it activates the magnetometer, it follows that the luggage, including containers which might reasonably contain implements of a hijacker, can be thoroughly searched.

The marshal was not required to defer his search of the laundry bag until after looking for other metallic implements in the luggage. (*United States* v. *Mitchell* (E.D.N.Y. 1972) 352 F.Supp. 38, 44, affd. (2d Cir. 1973)

486 F.2d 1397.) Nor was the marshal required to put the laundry bag itself through the magnetometer before opening it. If security officials had to test each and every package in the flight bag separately, it would create intolerable and unreasonable delays in the boarding and inspection processes.

In the scope of his duty to determine the object or objects in appellant's luggage which caused the magnetometer to give a high reading, the marshal was entitled to open the laundry bag and search its contents. When he looked inside, and saw marijuana in plain sight in two clear plastic or cellophane bags, he was, of course, entitled to seize the contraband which not only was in plain sight but also emitted the odor of marijuana. (*People* v. *McKinnon,* 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097]; *People* v. *Lanthier,* 5 Cal.3d 751, 756 [97 Cal.Rptr. 297, 488 P.2d 625]; *People* v. *Miller,* 33 Cal.App.3d 191, 194-196 [108 Cal.Rptr. 788].)[3] Although it was not the marshal's duty to search for narcotics, he was not required to blind himself to the felony being committed in his presence, and he was authorized to arrest appellant for it. In *People* v. *Hyde, supra* at page 166, the court stated: "The fact that airport searches, by virtue of sheer numbers, will inevitably lead to the detection of some individuals involved in criminal conduct unrelated to the commandeering or destruction of aircraft does not alter the fundamentally administrative character of the screening procedure. If the initial intrusion is justifiable as part of a regulatory effort to prevent the hijacking of airplanes, the incidental discovery of contraband does not offend the Fourth Amendment." (See *People* v. *Lacey,* 30 Cal.App.3d 170, 175-176 [105 Cal.Rptr. 72].)

Finally, appellant contends that the search of the laundry bag was illegal in the absence of proof that the marshal advised appellant that he could avoid the search by choosing instead not to board the airplane, citing *United States* v. *Meulener* (C.D.Cal. 1972) 351 F.Supp. 1284, 1289. (See also *United States* v. *Davis* (9th Cir. 1973) 482 F.2d 893,

---

[3]Even before opening the laundry bag the marshal smelled the familiar odor of marijuana emanating from it, and therefore had probable cause to suspect a felony being committed in his presence, permitting him to arrest appellant and seize the bag. (See *Mann* v. *Superior Court,* 3 Cal.3d 1, 7-8 [88 Cal.Rptr. 380, 472 P.2d 468]; *People* v. *Nichols,* 1 Cal.App.3d 173, 175 [81 Cal.Rptr. 481]; *People* v. *Peterson,* 9 Cal.App.3d 627, 633 [88 Cal.Rptr. 597]; *People* v. *Anderson,* 9 Cal.App.3d 80, 85 [88 Cal.Rptr. 4]; *People* v. *Lovejoy,* 12 Cal.App.3d 883, 887 [91 Cal.Rptr. 94]; *In re Elisabeth H.,* 20 Cal.App.3d 323, 328 [97 Cal.Rptr. 565]. See also *Guidi* v. *Superior Court,* 10 Cal.3d 1, 17, 19-20 [109 Cal.Rptr. 684, 513 P.2d 908].)

910-911.)[4] This contention is without merit. The boarding search in *Davis* was conducted in March 1971, over a year before the search in this case, before the issuance of federal regulations mandating preboarding screening of passengers in February 1972[5] and before the widespread publicity given to the passenger screening program. *Davis* recognizes that "[i]t may well be that under the present airport screening program, operating pursuant to current regulations, the alternatives presented to a potential passenger approaching the screening area are so self-evident that his election to attempt to board necessarily manifests acquiescence in the initiation of the screening process." (482 F.2d at p. 914.) Once the screening process has begun, its validity is measured by its reasonableness in scope, not by a theory of consent. (*People* v. *Hyde, supra,* 12 Cal.3d at pp. 162 fn. 2, 169.) Thus it is not fatal to the validity of the search that the marshal does not advise the passenger that he may withdraw from the flight rather than submit to a search. As stated in *United States* v. *Albarado* (2d Cir. 1974) 495 F.2d 799, 808: "Because, however, as we view it, the legality of the search does not rest on a 'consent' theory, but rather on the reasonableness of the total circumstances, *the fact* that a passenger may withdraw at any time plus the general knowledge that one is subject to a search if one flies is sufficient in light of the otherwise minimized invasion of the passengers' privacy." (Fn. omitted; italics in original.)

The references in *People* v. *Hyde, supra,* to a passenger's avoiding a search by electing not to board the airplane[6] are in the context of the general observation that potential travelers know in advance that they can avoid a search of carry-on luggage either by choosing a different

---

[4]It is clear that in asserting a right to avoid search by withdrawing from the boarding area and declining to take the flight, *Meulener* and *Davis* are referring to the ordinary passenger as to whom there are no specific grounds to suspect of being a potential hijacker. (*United States* v. *Meulener, supra,* at p. 1290; *United States* v. *Davis, supra,* at pp. 911-912.) If other suspicious circumstances, however, reasonably suggest that the passenger is a potential hijacker, he may be detained for investigation. (*United States* v. *Skipwith* (5th Cir. 1973) 482 F.2d 1272, 1277, 1281; *United States* v. *Legato* (5th Cir. 1973) 480 F.2d 408, 411 fn. 8, cert. den., 414 U.S. 979 [38 L.Ed.2d 223, 94 S.Ct. 295]; *United States* v. *Cyzewski* (5th Cir. 1973) 484 F.2d 509, 513 fn. 4, cert. dism. 415 U.S. 902 [39 L.Ed.2d 459, 94 S.Ct. 936].)

[5]See *People* v. *Kluga, supra,* 32 Cal.App.3d 409, 412.

[6]The majority opinion in *Hyde* states: ". . . airport screening procedures must be as limited in intrusiveness as is consistent with their justification, and an individual may avoid submitting to a search altogether by electing not to board the airplane." (12 Cal.3d at p. 169.) The concurring opinion states: "Thus a person who proceeds up to the point where the searches are being conducted must be permitted to elect not to be searched if he is willing to abandon his plans to board the airplane." (12 Cal.3d at p. 177 fn. 15.)

means of transportation or by the simple expedient of checking all baggage rather than carrying it on board.[7]

The result in *Hyde* also makes clear that the court's comments concerning *the fact* that a passenger may avoid airport searches by not boarding the airplane or by checking his luggage are not intended to state a requirement that airport marshals specifically advise passengers that they may withdraw from the boarding area rather than submit to a search. Nowhere in the statement of facts in the opinion is there any indication that such a warning was given, but both the majority and the concurring opinions found the search of the shaving kit in the defendant's hand luggage to be reasonable, and the court was unanimous in affirming the judgment of conviction. The instant case is similar to *Hyde,* except that a laundry bag rather than a shaving kit was opened. The search and seizure in this case was reasonable and lawful.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[7]Thus the concurring opinion in particular stresses that airline passengers have advance notice that they will be subject to preboarding inspection and that they may avoid all intrusion into privacy by using another means of travel or by checking their baggage instead of carrying it on board. (12 Cal.3d at pp. 175-176.)