549 P.2d 600

**STATE of Arizona, Appellee,**

v.

**Leonard Eugene WHITE, III, Appellant.**

**No. 1 CA–CR 1000.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 13, 1976.
Rehearing Denied June 15, 1976.
Review Denied July 13, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

Appellant filed his appeal from a conviction for possession of marijuana for sale, in violation of A.R.S. § 36–1002.06. The sentencing court suspended the imposition of sentence and placed appellant on probation for 7 years. On appeal, the appellant raises the following issues:

1. The trial court erred in not granting appellant's motion for mistrial after the County Attorney's reference to the "uncontradicted" nature of the evidence presented by the state made during the closing argument.

2. That the court abused its discretion in allowing a police officer to state his opinion that marijuana seized from the appellant was possessed for sale.

3. The trial court erred by not granting appellant's motion to dismiss because retrial unconstitutionally placed him in double jeopardy.

4. The trial court erred in its determination that certain items seized from appellant were not the product of an unreasonable search and seizure under the 4th and 14th Amendments.

The facts necessary to a resolution of the issues raised on this appeal are as fol-

lows. On December 29, 1973, the appellant attempted to board an aircraft at Sky Harbor Airport. In order to board the airplane, the appellant had to pas through a security check barrier which was in effect to detect the presence of weapons or explosives on the person and in the carry-on baggage of potential passengers.

Appellant submitted his luggage to the private security person employed by the airlines and proceeded to walk through a magnetometer check. The purpose of such a check is to detect metallic objects carried on the person of the potential passenger. Simultaneously, the appellant's luggage was placed on a conveyor belt which took his carry-on luggage past an x-ray scope which was viewed by a security guard. The x-ray scope was utilized to inspect the interior of all carry-on baggage for weapons or explosives.

Since the x-ray scope indicated large, gray, "indeterminate" masses, the security person observing the x-ray scope indicated to another security person that appellant's luggage would have to be searched. The appellant was informed of this decision and he told the second security guard to go ahead and open the suitcase. Upon opening the suitcase and moving miscellaneous clothing items, several rectangular shaped packages wrapped in green, polyethylene plastic were observed. Appellant was asked what the packages contained and responded that he did not know.

At this point, the security personnel advised the appellant that the packages would have to be opened and he told the person to go ahead and open the package. Upon opening the packages, a white powder fell from the interior, exposing an inner wrapping of red paper. At this point, a Phoenix police officer, stationed at the airport stepped up to assist the security personnel in the search. The police officer eventually punctured a hole through the inner red lining of the package causing a green leafy substance to fall out. At this point appellant was placed under arrest.

Appellant's first trial ended in a mistrial when the police officer who had conducted the search at the airport testified to matters not previously disclosed to the defense pursuant to Rule 15.1(a)(4), Ariz.R.Crim.P.

At appellant's second trial, the jury returned a verdict of guilty. However, the court granted a motion for a new trial based on the fact that the same police officer may have viewed jury notes during a recess prior to his testifying on behalf of the state.

At the beginning of the third trial, which likewise resulted in a verdict of guilty, appellant moved to dismiss the charge against him, arguing that a third retrial would unconstitutionally place him in double jeopardy.

## PROSECUTOR'S CLOSING ARGUMENT

Appellant's first argument on appeal raises the question of whether the County Attorney's references to the "uncontroverted" nature of the evidence against the appellant and his allusion to the appellant's non-production of witnesses was a direct comment on appellant's failure to take the witness stand and thus a violation of the appellant's privilege against self-incrimination. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ The appellant's counsel moved for a mistrial at the conclusion of the prosecutor's argument to the jury. However, the trial judge denied, and we think properly so, the motion for mistrial based on the prosecutor's reference to the uncontroverted nature of the evidence. Our review of the record convinces us that his statements were general comments on the failure of the defense to contradict the evidence and was not error. *See, State v. Acosta*, 101 Ariz. 127, 416 P.2d 560 (1966). Taken in the context of the entire closing argument made by the prosecutor, his comments did not unduly call attention to defendant's failure to testify in his own behalf. *State v. Adair*, 106 Ariz. 58, 470 P.2d 671 (1970). His comments were intended to bring home the point that the evi-

dence was uncontroverted, at least as far as the State was concerned. *See also, State v. Arredondo,* 111 Ariz. 141, 526 P.2d 163 (1974); State v. Berryman, 106 Ariz. 290, 475 P.2d 472 (1970).

## POLICE OFFICER'S TESTIMONY

Appellant argues that the trial court committed reversible error in permitting a police officer to give his opinion as to whether the marijuana found in appellant's luggage was possessed for sale. Appellant argues that such testimony was directed to the "ultimate facts" at issue in the case and that the jury should have been the sole and final arbiters of such issue.

Whether a witness has been sufficiently qualified so as to become an "expert" is a decision left to the sound discretion of the trial court. *State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974). The trial judge's decision will not be reviewed unless there is a showing of abuse of discretion. *State v. Seebold,* 111 Ariz. 423, 531 P.2d 1130 (1975). We note that appellant has not argued that there was not sufficient foundation laid in order to support the trial court's finding that the witness was qualified to testify as an expert. He argues only that it was error to allow the officer to give his testimony on the issue noted above. It is the rule in this state that an expert may state his opinion on a subject even though it may involve an opinion on an ultimate fact to be determined by the trier of fact. *State v. Keener, supra,* 110 Ariz. at 466, 520 P.2d 510. From a review of the testimony we, as did the court in *State v. Keener, supra,* find that the trial court did not abuse its discretion in permitting the police officer to state his opinion and the basis for it.

## DOUBLE JEOPARDY

As his third issue on appeal, the appellant argues that his third trial on the charge of possession of marijuana for sale was a violation of the constitutional proscription against double jeopardy.

The trial court declared a mistrial in appellant's first trial in this cause, because a police officer called as a witness by the State testified to matters not previously disclosed pursuant to Rule 15, Ariz. R.Crim.P. At the conclusion of the second trial, the jury returned a verdict of guilty. Subsequently, the appellant filed a motion for new trial, alleging that the same officer who had precipitated a mistrial in the first case had inspected certain jury notes during a court recess prior to his testifying for the State. The trial court granted appellant's motion for a new trial. At the beginning of the third trial, appellant moved for a dismissal of the charges against him, arguing that this third trial would unconstitutionally place him in double jeopardy. The appellant also argues that it was error for the trial court not to grant his motion to present a plea of former jeopardy to the jury, pursuant to A.R.S. § 13–1592.

We recognize, as the court stated in *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), that there is a compelling interest in preventing oppression and harassment of the individual by repeated prosecutions by the State for the same offense. However, we think that the court in *United States v. Jorn, supra,* also accurately assessed the competing interests of a defendant and society when a mistrial is declared, when it stated:

"Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense.

. . . The determination to allow reprosecution in these circumstances reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decision making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial

error." 400 U.S. at 483, 484, 91 S.Ct. at 556.

We note that the Arizona Supreme Court has recently reviewed an issue similar to that raised by the appellant on this appeal. In *State v. Wright*, 112 Ariz. 446, 543 P.2d 434 (No. 3247, filed December 8, 1975), the defendant argued that by being tried a third time, he was subjected to double jeopardy. The defendant there argued that since the first mistrial was caused by the testimony of the arresting officer, it was fundamentally unfair for him to be tried again. The court quoting from the case of *Muller v. State,* 478 P.2d 822 (Alaska 1971), stated:

"Thus, in cases where it is clear that the prosecutor, motivated by a desire to avoid an acquittal in a case which is going badly, engages in purposeful misconduct which forces the court to declare a mistrial, the policy of protecting an accused individual from harassment by consecutive prosecution may demand that a retrial be barred, even though the mistrial was manifestly necessary. *Muller v. State, supra,* 478 P.2d at 827. (footnotes omitted)."

The court in Wright concluded that:

"There is nothing in the record before us to indicate that the State engaged in any intentional misconduct or that defendant was in any way subjected to harassment or oppression in being tried the third time. We find no violation of defendant's rights under the double jeopardy provisions of the Arizona or federal Constitutions."

As in *Wright,* we find nothing in the record to indicate that the misconduct of the police officer was deliberately interjected so as to force a mistrial of a badly going prosecution. To the contrary, at least insofar as the second trial was concerned, a guilty verdict had already been obtained when the mistrial was granted. We therefore find no intentional misconduct which was motivated by a desire to harass the defendant or declare a mistrial so a better case could be subsequently presented so as

to bring about the sanctions of double jeopardy. *State v. Ballinger,* 19 Ariz.App. 32, 504 P.2d 955 (1973).

■ Nor do we believe the trial court was required to submit this issue to a jury. A.R.S. § 13–1592 does require the trial judge to submit a question of fact arising from a plea of double jeopardy to the jury. However, when the plea does not present a question of fact the issue need not be submitted. *State v. Woodridge,* 95 Ariz. 84, 386 P.2d 851 (1963):

"A.R.S. § 13–1592 does not, however, require a finding by the jury in every case in which a plea of double jeopardy is interjected. If the previous prosecution could not constitute double jeopardy as a matter of law, the trial court may so rule without presenting the plea to the trier of fact." 95 Ariz. at 85, 386 P.2d at 852.

The trial judge properly refused to submit this issue to the jury.

## SEARCH AND SEIZURE

Finally, appellant contends that the search of his suitcase and its contents and the subsequent seizure of the marijuana contained in it contravened the protections guaranteed by the fourth amendment.

■■ Appellant recognizes that screening searches of potential airline passengers are conducted as part of a general regulatory scheme to prevent the carrying of weapons or explosives aboard aircraft. Pre-boarding airport searches are justified by the compelling interest in protecting the safety of prospective passengers and millions of dollars worth of private property. *State v. Damon,* 18 Ariz.App. 421, 502 P. 2d 1360 (1972); *United States v. Edwards,* 498 F.2d 496 (2nd Cir., 1974); *United States v. Davis,* 482 F.2d 893 (9th Cir., 1973); *People v. Hyde,* 12 Cal.3d 158, 115 Cal.Rptr. 358, 524 P.2d 830 (1974); *see generally,* 14 A.L.R.Fed. 286. However, this screening search, to be consistent with the effectuation of the administrative goal that justifies it, must be limited in its intrusive-

ness. *State v. Damon, supra*; *United States v. Davis, supra*. A search is justified only so long as it recognizes the right of a person to avoid search by electing not to board. *State v. Miller*, 110 Ariz. 491, 520 P.2d 1115 (1974); *United States v. Edwards, supra*; *United States v. Davis, supra*; *People v. Hyde, supra*. However, it is not fatal to the validity of a pre-boarding search that the person inspecting the baggage does not personally advise the passenger that he may withdraw from the flight rather than submit to a search. *People v. Bleile*, 44 Cal.App.3d 280, 286, 118 Cal.Rptr. 556, 560 (1975).

Appellant urges that the search of his luggage was a general exploratory search rather than a limited search for weapons. He predicates this conclusion on an argument that there was no objective evidence that he was carrying either weapons or explosives. Nevertheless, he does admit that the image shown on the x-ray screen, as his suitcase passed through the mechanism was, "indeterminate". The image shown on the screen indicated large, gray masses within the suitcase. The security personnel testified that they were unable to identify the "shapes" and determined that a visual inspection of the contents would be necessary.

■ Though the airlines may screen all who board, numerous cases have recognized that this screening process conflicts with the fourth amendment rights of a potential passenger. *United States v. Edwards, supra*; *United States v. Davis, supra*; *State v. Damon, supra*. However, given the minimal intrusion involved and the considerable countervailing interests in protecting lives and property, a balance has been struck in favor of allowing these types of searches. Nevertheless, as noted above, the search, to be valid, must recognize the right of a passenger to avoid the search by declining to board the aircraft. *United States v. Miner*, 484 F.2d 1075 (9th Cir., 1973); *United States v. Davis, supra*; *State v. Miller, supra*; *People v. Hyde, supra*. The passenger's consent to the search

may be implied where boarding signs clearly inform him that his luggage is subject to search. *United States v. Edwards, supra*; *United States v. Davis, supra*; *Cf State v. Miller, supra*. This is sufficient to inform the passenger of the alternatives: Either he may submit to a limited search for the protection of all or he may forgo the invasion of his personal effects and seek other means of transportation.

■ In the instant case signs were posted. Thus, appellant may be deemed to have consented to a limited search of his baggage to effect the purpose of the pre-boarding screening. Furthermore, the "indeterminate" image clearly supported a further intrusion into the luggage in order to satisfy the security officer that the "indeterminate" shape was not at least explosives, their shape being subject to different interpretations by reasonable persons. Here, the suitcase, when opened, revealed seven large packages wrapped in green, polyethylene plastic that were taped shut. (See State Exhibit No. 1). The court in *United States v. Kroll*, 481 F.2d 884 (8th Cir. 1973), quoting from the district court decision in that case, stated:

> "The need to search, however, may be enhanced by additional facts of which the searching officer is aware. That is to say, the generalized need to search can become particularized as additional facts become operative. For instance, if the searching officer finds an unusual device in a suitcase and the passenger cannot give an acceptable explanation for its presence, suspicions are reasonably raised and the need to search farther and more closely is enhanced. In this manner, a greater intrusion into a passenger's privacy is offset by a greater need to search. Simply put, an officer is limited at the initial stage by the probabilities of a situation and reasonable suspicion is required before the search may be expanded." 481 F.2d at 887.

We think that the unusual wrappings found in the suitcase, coupled with the appellant's consent to proceed further and his

response that he did not know what the packages contained, reasonably raised the suspicions of the security personnel and the need to search further and more closely was enhanced. The security personnel then opened one of the packages and a white powder spilled from the end of it, exposing an inner, red wrapping paper. It was at this point that the Phoenix Police officer who had been observing the opening procedures moved to the assistance of the security personnel. He asked appellant to open the interior package, to which the appellant replied that he would rather not. At this point, it would seem logical to conclude that the "consent" impliedly given by the appellant to the initial search was withdrawn and the justification for the search ended. As was stated in *United States v. Miner*:

> "However, it is undisputed that when the airline employees attempted to extend the search to Miner's suitcase, he responded by saying, 'No, it's personal.' At the least, this was an apparent withdrawal of the implied 'consent.' At that point, the airline employees would have been justified in refusing to permit him to fly, but they could not compel him to submit to further search." 484 F.2d at 1076.

 Thus, appellant's argument that it was encumbent upon the security personnel to personally inform him that he had a right to refuse to be searched, if he should choose not to board the aircraft, appears to be without merit since he apparently was aware of his right to prevent the further search of his luggage. In any event, we think that such advice was not required. *See, People v. Bleile, supra.* Nevertheless, a search may continue where there is probable cause to believe that the search will reveal contraband. *State v. Fellows*, 109 Ariz. 454, 511 P.2d 636 (1973); *State v. Damon, supra.* We think that the officer would have had probable cause to continue the warrantless search of the appellant's

luggage if he had a reasonable belief, arising out of the circumstances known to him, that the packages contained contraband. *State v. Fellows, supra, Cf. State v. Miller, supra, State v. Damon, supra.*

The police officer testified at the preliminary hearing, the transcript of which was used as a basis for the motion to suppress, that at the point when he observed white powder fall from the package he believed, based on his experience with narcotics, the presence of this powder to mask the odor strongly suggested the presence of marijuana. We note, further, that the officer's testimony both at trial and at the preliminary hearing, indicated that he heard the conversations between appellant and the security personnel who checked his luggage; that he heard the appellant disclaim knowledge of the contents of the package; that he observed appellant take several steps back after the suitcase was opened and that he turned red in the face; that his actions were such that the officer and his supervising lieutenant concluded that the appellant was about to run; and that the lieutenant positioned himself to the rear of appellant at this time.

We think that the observations of the officer, taken together with his experience with narcotics, provided sufficient probable cause to continue the search of appellant's packages, at this point, notwithstanding his expressed desire that the search cease. No search warrant was required under the circumstances. *State v. Fellows, supra.* Neither the initial intrusion into the suitcase, justified on the basis of preventing hijacking and resultant damage, nor the subsequent search, based on probable cause, were thus violative of appellant's fourth amendment rights.

Judgment and sentence are affirmed.

SCHROEDER and WREN, JJ., concurring.