658 P.2d 204

**STATE of Arizona, Appellee,**

v.

**William Charles WILSON, Appellant.**

**STATE of Arizona, Appellee,**

v.

**Richard Karl KEREKES, Appellant.**

**Nos. 1 CA–CR 4987, 1 CA–CR 4988.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 21, 1982.

Rehearing Denied Dec. 17, 1982.

Review Denied Jan. 18, 1983.

**552**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Division, Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant Wilson.

Robert L. Storrs, Phoenix, for appellant Kerekes.

## OPINION

GRANT, Judge.

William Charles Wilson and Richard Karl Kerekes were charged by indictment with one count of second degree conspiracy, A.R.S. § 13–331(B)[1] and six counts of fraudulent scheme or artifice, A.R.S. § 13–320.01.[2] In addition, Kerekes was individually charged with seven counts of fraudulent scheme or artifice. All offenses were alleged to have occurred in 1976.

The first two jury trials resulted in mistrials on the motion of Wilson, Kerekes and other co-defendants. A third jury trial likewise resulted in a mistrial on the motion of all defendants, when the following occurred during the examination by the prosecutor of the chief investigating officer, Berentz. After Berentz identified himself as a police officer, the prosecutor asked him the following questions:

Q In 1978 with what division were you with?

A Organized Crime Bureau.

Q As a result of working in that division, did you do any investigation into a company called Fruit Juice Corporation of Phoenix?

A I did.

MR. McVAY: May we approach the bench?

THE COURT: Yes.

MR. McVAY: At this time the Defendant Wilson makes a motion for mistrial, based upon the last two statements of this witness. There was absolutely no reason to demonstrate before the jury this is an organized crime type of investigation or prosecution.

It knowingly inflamed and prejudiced the jury against my client and the other defendants.

It has no relevancy to the charge on trial for which the defendants are being

---

1. Added Laws 1971, Ch. 78, § 2. As amended Laws 1975, Ch. 22, § 1.

2. Added Laws 1976, Ch. 134, § 1, effective June 27, 1976.

tried. It suggest [sic] to the jury these people are mob type defendants.

For that reason my clients [sic] been prejudiced to the point where the jury can not give him a fair trial.

I defy the county attorney to determine the relevancy what organized crime investigation has to do with the issues being tried by the jury.

I move for a mistrial.

MR. BERRY: I adopt the motion as my own, make the same motion.

MR. STORRS: I adopt the same motion for mistrial.

MR. CARSON: I make the same motion for mistrial, Your Honor.

MR. MOORE: I make the same motion on behalf of Mr. McGann.

MR. SCHWARTZ [Prosecutor]: There are numerous divisions, such as burglary, robbery, homicide. There is no implication it was organized or not. Just what division he works for.

If the Court wants to give an instruction. I don't see the relevancy.

MR. McVAY: I agree absolutely there is no relevancy. That's the reason for the motion. Extremely prejudicial to suggest these defendants are members of organized crime. That's what the answer does. Clearly prejudicial to them. They can not receive a fair trial.

The charges here are fraudulent scheme and design. No racketeering, anything of that nature before the jury.

For that reason we will move for a mistrial.

THE COURT: Read back the question.

MR. McVAY: Read back the last two questions and answers.

(Whereupon, the Court Reporter read back the last two questions and answers).

MR. SCHWARTZ: I don't see how? They do it every day.

THE COURT: I hate to do it, after all this time.

It is ordered that the motion of the Defendant Wilson, for a mistrial, joined in by the other Defendants, is granted. A mistrial is declared.

Prior to the start of the fourth jury trial, on June 10th and June 6th, 1980, Wilson and Kerekes filed pleas of once in jeopardy and a demand for jury trial on that issue pursuant to A.R.S. § 13–1592, of the 1956 Criminal Code. They also filed a motion to dismiss on double jeopardy grounds. The trial court denied the motion to dismiss and also refused to submit the issue of once in jeopardy to the jury, finding that § 13–1592 of the 1956 Code had been repealed effective October 1, 1978, by the 1978 Criminal Code.

Prior to trial, one count of fraudulent scheme or artifice was dismissed on the state's motion. Wilson was found guilty of all seven counts charged against him. Kerekes was found guilty of the conspiracy charge and six of the original thirteen fraudulent scheme or artifice counts against him. Following entry of judgment of guilt, they were sentenced to terms of three to four years imprisonment on the conspiracy count, and seven to ten years imprisonment on each of the fraud counts. All sentences were ordered to run concurrently, but consecutive to sentences imposed on matters in any other jurisdiction. On the following day, the trial court amended the sentence to order that all would run concurrently with any sentences imposed in other jurisdictions. We have jurisdiction of the appeals of both defendants from the convictions and sentences. A.R.S. §§ 13–4031, –4033. They have been consolidated in this court at Kerekes' request.

The state's theory of the case was that appellants and others, including one Rex Parsons, were instrumental in the creation and operation of Fruit Juice Corporation of Phoenix. The purpose of this company was to promote the sale of fruit juice machines through telephone solicitation. However, the state contended that the defendants intended to deliver only a few of the machines actually sold in order to establish a "track record" and then to abscond with the money of subsequent purchasers. Wilson and Kerekes had been long-time associates. A witness who had pled guilty, testified for the state that he and Kerekes were involved

in a mortgage business in Phoenix. Wilson came to Phoenix from Denver to help set up a scam operation in Phoenix like the one he was running in Denver. They then organized the Fruit Juice Corporation. After contracts for the purchase of machines were signed, only a few of the machines were delivered to keep up appearances. The purpose was to take as much money as they could and "walk away." They anticipated the operation would last three to six months in one location before the public and the authorities realized what was happening. Both Wilson and Kerekes were involved in the day-to-day running of the business.

The defendants contended that the business was not designed or intended to defraud anyone. They conceded that several purchasers who paid for juice machines did not receive them. However, they claimed that the non-delivery was due to the failure of the business shortly after its inception when the operators of the company, including Wilson and Kerekes, became involved in civil litigation over control of the company and its assets. This dispute, among other things, led to the "freezing" of a substantial portion of the company's assets.

## DOUBLE JEOPARDY

Appellants first contend that their fourth trial was barred by principles of double jeopardy, when the third trial ended in a mistrial as a result of intentional prosecutorial misconduct. We do not agree.

■ Ordinarily, double jeopardy does not bar a retrial following a mistrial, when the mistrial is granted at the defendant's request. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). However, a defendant's request for a mistrial does not permit retrial where the request by the defendant was necessitated by prosecutorial misconduct intentionally designed to obtain another and more favorable opportunity to convict the defendant. *City of Tucson v. Valencia,* 21 Ariz.App. 148, 517 P.2d 106 (1973); *State v. Ballinger,* 19 Ariz. App. 32, 504 P.2d 955 (1973). Appellants argue that the cases have been inconsistent regarding this standard, and that they re-

quire variously that the prosecutor's motives be either; (1) to avoid an acquittal in the present trial, *see United States v. Jorn, supra; State v. Soloman,* 125 Ariz. 18, 607 P.2d 1 (1980); *State v. Madrid,* 113 Ariz. 290, 552 P.2d 451 (1976); or (2) to harrass the defendant, *see State v. White,* 26 Ariz. App. 505, 549 P.2d 600 (1976); or (3) to provoke a mistrial and obtain another, more favorable opportunity to convict the defendant, *see State v. Ballinger, supra; State v. Marquez,* 113 Ariz. 540, 558 P.2d 692 (1976); *State v. Way,* 129 Ariz. 357, 631 P.2d 139 (App.1981).

In considering this standard, it seems obvious that prosecutors are almost always attempting to avoid an acquittal, as required by the first suggested standard, and that by the very nature of their jobs they are harrassing a defendant, as suggested in the second interpretation. Thus, the third standard above is the only meaningful standard regarding prosecutors' motives. Our conclusion as to the proper standard is supported by the result in *Oregon v. Kennedy,* —— U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). In that case, the United States Supreme Court held that the 5th and 14th Amendment guarantees against double jeopardy apply in the situation only where the prosecutorial conduct is intended to goad or provoke a defendant into moving for a mistrial. The court held that "bad faith conduct" or "harrassment" or "overreaching" all provided insufficient standards for meaningful guidance.

■ Appellants concede that the prosecutorial conduct in this case does not reach the required level of intentional misconduct designed to provoke the defendants into moving for a mistrial. We agree. First we note that the initial question, dealing with the fact that the investigator was with the Organized Crime Bureau was not improper. This question would enable a jury to better evaluate his testimony and the source of his knowledge. *State v. Brewer,* 26 Ariz.App. 408, 549 P.2d 188 (1976). The next question, suggesting that his investigation into the appellants' corporate activities was a result of being in the Organized Crime Bu-

reau, is arguably no more harmful than the initial question. Additionally, there was no showing of any intent on the part of the prosecutor to create a mistrial. Appellants' attorneys concede this. The prosecutor stated later that he thought the trial had been going well at that point. We find, therefore, that the fourth trial was not barred by principles of double jeopardy.

## JURY TRIAL ON DOUBLE JEOPARDY DEFENSE

Appellants next contend that the trial court erred in denying them a jury trial on their double jeopardy defense, as guaranteed by A.R.S. § 13–1592[3] of the 1956 Code, which was repealed by the new Arizona Criminal Code. Section 13–1592 provided as follows:

§ 13–1592. Issue of fact raised by plea by defendant; jury trial

An issue of fact arises in a criminal action upon a plea of not guilty, of former conviction or acquittal of the same offense, or of once in jeopardy, and the issue of fact shall be tried by a jury.

Appellants have cited us to no constitutional requirement for a jury trial on the issue of double jeopardy, and our research has disclosed none.

The third mistrial, which gave rise to appellant's claim of double jeopardy, was declared on April 30, 1980. Thus, the double jeopardy issue arose after the statute had been abolished, effective October 1, 1978. However, we need not decide the applicability of the statute in this case.

 Assuming the statute in question applied to these proceedings, it requires a trial judge to submit only questions of fact arising from a plea of double jeopardy to the jury. Where the plea does not present a question of fact the issue need not be submitted, and if the prosecution could not constitute double jeopardy as a matter of law, the trial court may so rule without presenting the plea to the jury. *State v. White*, 26 Ariz.App. 505, 549 P.2d 600

(1976); *State v. Woodring*, 95 Ariz. 84, 386 P.2d 851 (1963); *see State v. Ballinger, supra*. This record reveals that the prosecutor's conduct did not reach the level required for a successful plea of former jeopardy, and defendants conceded as to the prosecutor's state of mind. As a matter of law, there was no defense in issue for submission to the jury.

## OTHER BAD ACTS

Appellants next contend that the admission into evidence of certain other, uncharged bad acts deprived them of the right to a fair trial and due process. Arizona Rules of Evidence, rule 404 provides as follows:

Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes

\*　　\*　　\*　　\*　　\*　　\*

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In analyzing this issue, we first observe that the primary issue presented to the jury was whether the defendants intentionally defrauded their victims, or whether this was a simple case of a business failure. Thus proof of motive, intent, preparation, plan, or absence of mistake or accident was highly probative. Rule 404(b), *supra*. We also note that the four instances specifically cited by these appellants occurred during the course of a complicated and protracted trial which lasted for several weeks.

 The first incident arose from the state's attempt to establish the long-standing relationship between appellants and Parsons. The prosecutor then attempted to establish that Parsons had lied in previous business dealings, including misrepresenta-

---

**3.** Transferred and renumbered as § 13–3982, Laws 1977, Ch. 142, § 154, effective October 1, 1978. Repealed Laws 1978, Ch. 201, § 249, effective October 1, 1978.

tions to a representative of the Securities and Exchange Commission in acquiring a company known as Century Mortgage in Salt Lake City. The prosecutor then attempted to show that Kerekes had been involved with Parsons in Century Mortgage. However, the testimony clearly demonstrated that it was defendant Berry, not Kerekes, who urged Parsons to lie to the Securities Exchange Commission. The question objected to asked only whether Kerekes participated in Century Mortgage. The objection to the question was sustained, and the jury was instructed to disregard it. Additionally, the evidence was admissible under the "complete story" exception to explain the interrelationship of the many defendants and their business dealings, as well as their state of mind. *State v. Price*, 123 Ariz. 166, 598 P.2d 985 (1979). Parsons and Kerekes were both involved in a mortgage company in Phoenix. Parsons operated Century Mortgage in Salt Lake City. Kerekes went there to handle the operation and worked out of the same place as Parsons. Century Mortgage was used to funnel funds between the Phoenix, Salt Lake, and Denver operations and to arrange credit. Kerekes' involvement in Century simply completed the story.

■ Second, appellants complain about an incident that occurred when Parsons was being examined by counsel for appellant Kerekes:

Q. Now, in fact, when you first started up you got at least a hundred cases of juice substantially cheaper than the price you were paying for that juice there, is that not correct?

A. When you say substantially you mean free?

Q. No. At about $2.00 a case?

A. We bought stolen juice at a real good price.

A JUROR: I didn't hear that.

We note that this answer was in direct response to questioning by defense counsel. It thus constitutes invited error. *State v. Lawrence*, 123 Ariz. 301, 599 P.2d 754 (1979). The trial court found that defense counsel should have been aware that he was

on dangerous ground in pursuing this line of questioning, and we see no reason to disturb that ruling. We find no error.

Third, appellants complain about certain testimony of Howard Woodall. Woodall testified that during 1976 when the Fruit Juice Corporation was conceived, established and operated, he, Parsons and Kerekes were "fairly close." Shortly thereafter, he told the jury that he was spending his time during this period "swindling people." We note that the answer was unresponsive to the question posed, that the jury had already been advised of Woodall's many illicit activities, and that the statement contained no reference whatsoever to appellants. On objection, it was stricken and the jury was admonished to disregard it. Again we find no error.

Finally, appellants complain of certain answers by the investigating officer Berentz. The following exchange took place between co-defendant Berry and Berentz:

Q Did you find one piece of concrete evidence, as distinct from what Mr. Parsons and Mr. Woodall told you in this case, again bearing in mind the people who didn't get their machines?

A Uh-hum.

Q Is there any record somewhere that says this is a fraud or this record is false or anything like that?

A It is not normally something a con man will do as far as writing down that this is a fraud.

Berry was attempting to stress that documents entered as exhibits were not illegal on their face. He thus got a reasonable answer to his open-ended question. Again, we find that this constitutes invited error. *State v. Lawrence, supra*. Additionally, any reference to the corporate management of the Fruit Juice Corporation as "con men" is totally harmless in this case, in view of similar implications by many other state's witnesses.

Appellants finally argue that even assuming the admissibility of each of these four items of evidence, there was no "substantial evidence" of each bad act sufficient to al-

low the case to be submitted to a jury, and therefore they were likewise inadmissible on this basis. *See State ex rel LaSota v. Corcoran,* 119 Ariz. 573, 583 P.2d 229 (1978). The short answer to this contention is that the requirement only applies when the prosecutor is affirmatively seeking to establish prior bad acts as part of his case and the trial court allows their admission. In the instant case, all the objectionable matters occurred on questioning by defendants, or as nonresponsive answers to prosecutorial questions, or were stricken by the trial court with instructions for the jury to disregard them. *State ex rel LaSota v. Corcoran* simply does not apply.

Having found no error, the judgments of conviction and the sentences are affirmed.

JACOBSON and BROOKS, JJ., concur.